**MISSOURI PACIFIC RAILROAD COMPA-NY, a Corporation, (Plaintiff) Appellant,**

v.

**Harold KUEHLE, Tax Collector of Cape Girardeau County, Missouri, (De-fendant) Respondent,**

**Cape Girardeau School District No. 63 et al., Intervenors-Respondents.**

**ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, a Corporation, (Plain-tiff) Appellant,**

v.

**Harold KUEHLE, Tax Collector of Cape Girardeau County, Missouri, (De-fendant) Respondent,**

**Cape Girardeau School District No. 63 et al., Intervenors-Respondents.**

**ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, a Corporation, (Plain-tiff) Appellant,**

v.

**Harold KUEHLE, Tax Collector of Cape Girardeau County, Missouri, (De-fendant) Respondent,**

**Cape Girardeau School District No. 63 et al., Intervenors-Respondents.**

**Nos. 56653, 56654, 56680.**

Supreme Court of Missouri,
Division No. 1.

July 17, 1972.

James E. Reeves, Ward & Reeves, Caruthersville, John F. McCartney, St. Louis, for plaintiff-appellant, St. Louis-San Francisco Ry. Co.; John McCullough, St. Louis, of counsel.

Harry C. Blanton, David E. Blanton, Blanton, Blanton, Rice & Sickal, Sikeston, for plaintiffs-appellants, Missouri P. R. Co., St. Louis S. W. Ry. Co.

Jack O. Knehans, Finch, Finch, Knehans & Cochrane, Cape Girardeau, Paul A. Mueller, Jr., Mueller & Statler, Jackson, for intervenors-respondents.

A. J. Seier, Prosecuting Atty., Cape Girardeau, for Harold Kuehle.

HOLMAN, Presiding Judge.

■ In each of these three cases, consolidated on appeal, plaintiff filed suit against the Tax Collector of Cape Girardeau County for refund of alleged excess school tax payments. The school districts of Cape Girardeau County intervened and judgments were rendered in favor of the defendant and the intervenors. Plaintiffs have appealed. We have jurisdiction because the case involves the construction of a state revenue law. Art. V, § 3, Mo. Const., V.A.M.S.

The case was submitted on an agreed statement of facts which discloses the following: After the school boards of the various school districts in Cape Girardeau County had determined the rate of levy on real property necessary to raise needed revenues for 1969, the State Tax Commission increased the assessed valuation of the real property in the county by approximately 16%. This increase brought into play § 137.073 [1] which provides for a readjustment of the prior levy when the county assessment has been increased by 10% or more. That section reads as follows:

"Whenever the assessed valuation of real or personal property within the county has been increased by ten per cent or more over the prior year's valuation, either by an order of the state tax commission or by other action, and such increase is made after the rate of levy has been determined and levied by the county court, city council, school board, township board or other bodies legally authorized to make levies, and certified to the county clerk, then such taxing authorities shall immediately revise and lower the rates of levy to the extent nec-

---

1. Statutory references are to RSMo 1969, V.A.M.S.

essary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy. Where the taxing authority is a school district it shall only be required hereby to revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy, plus such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation. The lower rate of levy shall then be recertified to the county clerk and extended upon the tax books for the current year. The term 'rate of levy' as used herein shall include not only those rates the taxing authorities shall be authorized to levy without a vote, but also those rates which have been or may be authorized by elections for additional or special purposes. No levy for public schools or libraries shall be reduced below a point that would entitle them to participate in state funds."

All of the school districts except one submitted revised rates of levy. Because plaintiffs are railroad companies the tax levy rate applicable to them is the average of all the school district levy rates in the county. See § 151.150. Prior to revision of the rates this average for Cape Girardeau County was $3.12 per hundred dollar valuation (hereinafter all references to the rate are on the basis of a hundred dollar valuation). The average rate after the revisions was $2.95. The total amount of taxes that would have been produced under the original levy was $3,169,434. The revised rates would have produced $3,471,356. In each school district the amount of taxes that would have been produced after the increased valuation and revision of rates was greater than that which would have been produced under the original rate of levy and valuation. In the largest school district, Cape Girardeau School District No. 63, the increase in the

amount of taxes produced under the revised rates over the original rates amounted to $134,727.00. Maintaining that the reductions in rates were insufficient to comply with § 137.073, plaintiffs paid part of the taxes under protest and filed these suits to recover that portion of the taxes pursuant to § 139.031.

Plaintiffs contend that the rates set forth in Exhibit A (hereinafter referred to as plaintiffs' rates) should have been used instead of the revised rates fixed by the school districts. Plaintiffs' rates would produce in each school district an amount of taxes which is more than the amount originally estimated as needed. In each instance these rates are lower than the revised rates submitted by the school districts. The average of plaintiffs' rates is $2.68. If plaintiffs' rates were used in all of the school districts, $3,290,238 in taxes would be produced. For the individual plaintiffs the amounts by which the actual taxes assessed exceed the amount that would be assessed under plaintiffs' rates are: Missouri Pacific Railroad Company, $3,117.46; St. Louis Southwestern Railway Company, $1,403.90; and St. Louis-San Francisco Railway Company, $2,964.12.

A preliminary issue must be decided before we can determine whether plaintiffs' rates or the school districts' revised rates should have been used. This issue concerns the loss in supplemental state aid which would result in three of the school districts if plaintiffs' rates were used. Under either plaintiffs' rates, or the school districts' revised rates, all of the school districts meet the basic eligibility requirements for state aid (§ 163.021 requires a minimum rate of $1.00 in order to be eligible for state aid). In order to qualify for additional state aid in the amount of $14 per resident pupil in average daily attendance, higher rates of levy are required. See § 163.031. Some of the school districts qualified for this additional state aid under either plaintiffs' rates or under the revised rates, and some qualified under neither. The problem which confronts us

here concerns those three school districts which would qualify for this additional state aid under the revised rates but not under plaintiffs' rates. In those three districts the rate necessary to qualify for additional state aid was $3.48. The plaintiffs' rates for each school district were less than that amount and the revised rates were more. The resulting losses in supplemental state aid to the school districts under the plaintiffs' rates would be: Jackson R–2, $31,810.00; Nell-Holcomb R–4, $2,727.00; and Oak Ridge R–6, $4,141.00. In plaintiffs' Exhibit A compensation for this loss in state aid is made in the following manner: The loss in supplemental state aid is added to the amount of taxes that would have been produced from the original rate of levy. A rate of levy that would produce that sum is then determined. Plaintiffs contend that this is the scheme envisioned by § 137.073, which provides, in part, "[The school districts] shall only be required hereby to revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy, plus such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation."

However, defendant and the intervenors (hereinafter respondents) argue that there can be no reduction in the rate of levy below an amount that would entitle the school districts to participate in the additional state aid. In support of their contention respondents point to the last sentence of § 137.073, which provides, "No levy for public schools or libraries shall be reduced below a point that would entitle them to participate in state funds." Respondents contend that this sentence is referring to *all* state funds available to the school district, and that it prohibits a reduction in the rate of levy which would result in a loss of supplemental state aid under § 163.031.

Respondents' interpretation of the sentence in question would probably be correct if it were not for the specific reference in a previous sentence of the statute to "such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation." This sentence obviously contemplates possible reductions in supplemental state aid and provides a means to compensate for the reduction.

" 'It is an elementary and cardinal rule of construction that effect must be given, if possible, to every word, clause, sentence, paragraph, and section of a statute, and a statute should be so construed that effect may be given to all of its provisions, so that no part, or section, will be inoperative, superfluous, contradictory, or conflicting, and so that one section, or part, will not destroy another.' [Citation omitted.] Moreover, it is presumed that the legislature intended every part and section of such a statute, or law, to have effect and to be operative, and did not intend any part or section of such statute to be without meaning or effect.' " Graves v. Little Tarkio Drainage Dist. No. 1, 345 Mo. 557, 134 S.W.2d 70, 78. To construe § 137.073 in the manner respondents advocate would result in part of the statute being inoperative and superfluous. If the statute were construed to prohibit a·reduction in levies which results in loss of supplemental state aid, then the provision for compensation under those circumstances would have no effect.

■ Plaintiffs maintain that the last sentence in § 137.073 only prohibits a reduction in the rate of levy to a point where *no* state funds would be available (i. e., a reduction below a rate of $1.00 since no state aid would be available if the rate were less than that amount. § 163.021). We have concluded that this is the correct construction to be placed on the statute. This interpretation harmonizes the various sentences and sections and provides a

workable plan consistent with the intent and purpose of the statutes. McCord v. Mo. Crooked River Backwater Levee Dist., Mo.Sup., 295 S.W.2d 42, 45. It also gives effect to each part of the statute. Stewart v. Johnson, Mo.Sup., 398 S.W.2d 850; Graves v. Little Tarkio Drainage Dist. No. I, supra.

Having ruled in favor of plaintiffs on this point the question we must now resolve is whether the school districts' revised rates produced "substantially the same amount of taxes as previously estimated to be produced by the original levy, plus such additional amounts as may be necessary approximately to offset [the loss in supplemental state aid]." § 137.073. Respondents argue that the amount of taxes collected from the plaintiffs is substantially the same since the amounts paid under protest are less than 7% of the total amount of taxes plaintiffs paid. Although this may be correct, it is irrelevant because the statute requires that the total amount of taxes *produced* be substantially the same; it says nothing about the amount of taxes paid by a particular taxpayer. In this case, after the adjustment for the loss in supplemental state aid has been made, the school districts' revised rates would produce $263,244.00 more than was originally estimated as needed.

The primary rule of construction of statutes is to ascertain the lawmakers' intent. Union Electric Co. v. Morris, Mo. Sup., 222 S.W.2d 767, 770. We have the view that the words "substantially the same amount" were used in § 137.073 with the recognition that a rate which would yield precisely the same amount would be virtually impossible to determine. However, the purpose of the section is obviously to prevent "windfalls" in school taxes to the school districts merely because the assessed valuation of the real property in a county increases. The legislature recognized (in the emergency clause of § 137.-073, which made the Act effective upon passage) that such an increase could result in hardship for the taxpayers. Section 2 of the original Act provides:

"Emergency—Because the State Tax Commission has announced that it is going to order a large increase in the assessed valuations of property in many counties in this state which will result in hardship for the citizens of this state unless the rate of levies are correspondingly reduced, and because the present law does not adequately protect the people of this state * * *." Laws of 1955, p. 836.

It is a well settled rule that a taxing statute must be strictly construed in favor of the taxpayer and against the taxing authority. Union Electric Co. v. Morris, supra, l. c. 770; United Air Lines, Inc. v. State Tax Commission, Mo.Sup., 377 S.W. 2d 444. We also note that under the plaintiffs' rates, after the adjustment for the loss in supplemental state aid, each school district would still receive more revenue (a total of more than $80,000) than was needed according to the original estimate. Under these circumstances we agree with plaintiffs that an increase of more than $260,000 in revenue produced amounts to an excessive "windfall" which § 137.073 was designed to prevent, and that the trial court erred in holding that the statute had been complied with. We therefore rule that the plaintiffs' suggested rates would have produced sufficient revenue for the school districts and at the same time meet the demands of § 137.073. Accordingly, we hold that plaintiffs are entitled to the refunds sought in their petitions.

Respondents contend that the trial court's judgments should not be set aside because they are not clearly erroneous. Civil Rule 73.01(d), V.A.M.R. The cases cited, Smith v. Tracy, Mo.Sup., 372 S.W.2d 925, and Sebree v. Rosen, Mo.Sup., 393 S. W.2d 590, are not in point. Since, in our opinion, the judgments of the trial court were for the wrong parties, it must follow that they were clearly erroneous. This point is ruled against the respondents.

The judgments are reversed and the causes remanded with directions to enter judgments for plaintiffs for the amount of taxes they paid under protest.

BARDGETT, J., and BONDURANT, Special Judge, concur.

SEILER, J., not sitting.