**MISSOURI PACIFIC RAILROAD COMPANY, a corporation, Plaintiff-Appellant,**

v.

**Nora CAMPBELL, Collector of Revenue, Iron County, Missouri, Defendant-Respondent,**

**Arcadia Valley R–2 School District et al., Intervening Respondents.**

**ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, a corporation, Plaintiff-Appellant,**

v.

**Nora CAMPBELL, Collector of Revenue, Iron County, Missouri, Defendant-Respondent,**

**Arcadia Valley R–2 School District et al., Intervening Respondents.**

**Nos. 57144, 57162.**

Supreme Court of Missouri, Division No. 1.

Nov. 12, 1973.

Motion for Rehearing or to Transfer to Court en Banc Denied Dec. 10, 1973.

Harry C. Blanton, David E. Blanton, Blanton, Blanton, Rice & Sickal, Sikeston, Donald E. Engle, George E. Bailey, St. Louis, David Donnelly, Donnelly, Baldwin & Wilhite, Lebanon, for plaintiffs-appellants.

Raymond R. Roberts, Roberts & Roberts, Farmington, for intervening defendant-respondent Arcadia Valley R-2 School District and South Iron R-1 School District.

L. Michael Lorch, Piedmont, for intervening defendant-respondent Iron County C-4 School District.

Frank Mack, Pros. Atty., Ironton, for defendant-respondent.

Robert Hickel, for amicus curiae.

HOLMAN, Judge.

In each of these cases, consolidated on appeal, plaintiff filed suit against the Tax Collector of Iron County for refund of alleged excess school tax payment. Three school districts of Iron County intervened and upon trial judgments were rendered in favor of defendant and the intervenors. Plaintiffs have duly appealed. We have jurisdiction because the case involves the construction of a state revenue law, and the notices of appeal were filed before January 1, 1972. Mo.Const., Art. V, § 3, V.A.M.S.

The case was submitted on an agreed statement of facts which included the following: "That each of the plaintiffs has

paid taxes under protest as set forth in their respective petitions and that each such plaintiff has given timely notice of its protest and has commenced its action for recovery of taxes paid under protest in proper time according to statutes properly applicable.

"That the total assessed value of real property in Iron County, Missouri, for the year 1968 was Thirty Million Five Hundred Ninety-Nine Thousand Ninety-Eight Dollars ($30,599,098.00), and that the total assessed valuation for the year 1969 was in the amount of Thirty-Four Million Three Hundred Forty-Nine Thousand Six Hundred Eighty-Two Dollars ($34,349,682.00), and that the resulting difference is an increase in the 1969 assessed valuation of more than 10 percent of the 1968 valuation.

"That the final determination of the amount of the increased valuation of 1969 over the assessed valuation of 1968 was made after the rate of levy had been determined and levied by the school boards of the various school districts.

"That the increase in assessed valuation in Iron County, Missouri, as aforesaid occurred principally as the result of new improvements made in real estate in Iron County, Missouri, after January 1, 1968, and before January 1, 1969, which resulted in such new improvements being assessed for the year 1969 and that without the inclusion of the new improvements assessed in 1969 as aforesaid, the increase in assessed valuation in Iron County, Missouri, would have amounted to less than 10 percent. That only a small portion of the increase in assessed valuation as aforesaid consisting of less than a 10 percent increase was attributable to the re-evaluation or increased valuation of the existing real estate and improvements as they existed as of January 1, 1968. There was no over-all or general increase made in the assessment of existing real estate and improvements for 1969 over 1968 by action of the State

Tax Commission or the Iron County Board of Equalization or the Iron County Assessor or other similar body.

"That the new improvements made as aforesaid were principally made upon new mining, milling, refining, smelting and industrial complexes, and new residential and business improvements constructed in Iron County, Missouri.

"That each of the defendant school districts filed rates of levy for the 1968–1969 school year and for the 1969–1970 school year on or before May 15, 1968, and May 15, 1969, as per the attached exhibits. That none of the defendant school districts filed amended rates of levy after the filing of the foregoing exhibits.

"That the principal issue to be determined by this court is whether or not the increase in assessed valuation, which occurred as aforesaid, is an increase of 10 percent or more within the meaning of § 137.073 [1] made after the rate levy has been determined entitling the plaintiffs to the relief prayed for in plaintiff's petition.

"If the court determines the issues as aforesaid in the affirmative, then it is stipulated and agreed that plaintiffs and each of them are entitled to the relief prayed for in their respective petitions."

Some additional evidence was offered by intervenors (and admitted over objection) which will be hereinafter referred to.

The portion of § 137.073 which is to be considered in the decision of this case reads as follows:

"Whenever the assessed valuation of real or personal property within the county has been increased by ten percent or more over the prior year's valuation, either by an order of the state tax commission or by other action, and such increase is made after the rate of levy has been determined and levied by the county court, city council, school board, township board or other bodies legally autho-

---

1. All statutory references are to RSMo 1969, V.A.M.S.

rized to make levies, and certified to the county clerk, then such taxing authorities shall immediately revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy."

For the year 1969 the school districts of Iron County made levies at an average rate of $3.00 per $100.00 valuation. See § 151.150. Thereafter, the assessed valuation of real estate in Iron County for 1969 was fixed at an amount which was an increase of 12.26 percent over the valuation for 1968. The districts did not "revise and lower the rates of levy," and hence Missouri Pacific paid $2,080.75 of its taxes under protest, and the other plaintiff paid $841.67 in the same manner.

As indicated, the districts fixed their levies (based on the 1968 valuation) in accordance with an estimate of their needs for the ensuing school year and filed same prior to May 15, 1969. See § 164.011. Plaintiffs contend that since the subsequent valuation showed an increase of more than 10 percent, the districts should have lowered the levies, in accordance with § 137.073, to the extent necessary to produce substantially the same amount of taxes as previously estimated to be produced by the original levy. Respondents contend that the statute has no application because the increase did not occur "by an order of the state tax commission or by other action." More specifically stated, they contend that the reduction provision of § 137.073 is activated only if the increase results from an increase in the assessed valuation of existing property; that it was not intended to apply where the increase results from the construction of new improvements such as industrial complexes and residential and business improvements.

The contention here presents a question of first impression in this state. We have recently decided two cases involving § 137.073, but the question here presented

was not raised in either of them. See Missouri Pacific Railroad Co. v. Kuehle, 482 S.W.2d 505 (Mo.1972), and St. Louis-Southwestern Ry. Co. v. Cooper, 496 S.W.2d 836 (Mo.1973). Our task, therefore, is to determine the meaning of that part of § 137.073 which provides that the levies shall be lowered when there is an increase of 10 percent or more occurring "either by an order of the state tax commission or by other action."

" 'The primary rule of construction of statutes is to ascertain the lawmakers' intent, from the words used if possible; and to put upon the language of the Legislature, honestly and faithfully, its plain and rational meaning and to promote its object * * *.' The statute in question here is a taxing statute and it is well settled that such a statute must be strictly construed in favor of the taxpayer and against the taxing authority. * * * and every word, phrase and sentence must be given some meaning if that can be done." Union Electric Co. v. Morris, 359 Mo. 564, 222 S.W.2d 767, 770 (1949).

We do not agree with the ruling of the trial court which sustained the contentions of respondents. It is true, as respondents suggest, that the urgent situation which motivated the passage of § 137.073 in 1955 was the impending increase in assessed valuations by the State Tax Commission. That Act provided that an emergency clause was necessary " [b]ecause the state tax commission has announced that it is going to order a large increase in the assessed valuations of property in many counties in this state which will result in hardship for the citizens of this state unless the rate of levies are correspondingly reduced, and because the present law does not adequately protect the people of this state * * *." Laws of Missouri 1955, p. 836. It is obvious, however, that the legislature did not intend that the statute have "one shot" application, or that it be limited to situations where the increase results from action by the State Tax Commission. This because of the use of the word "ei-

ther" preceding "order of the state tax commission" and the words that follow, "or by other action." And we see nothing to indicate that the "other action" would be limited to the County Board of Equalization because, if so, the legislature would have specifically so stated.

The phrase "or by other action" is very general. In Black's Law Dictionary, 4th Ed., "other" is defined as "different and distinct from that already mentioned," and "action" is defined as "something done." Combining the two definitions it would appear that "other action" means "something done which is different and distinct from that already mentioned" which, in this case, is action by the State Tax Commission. Since it has been shown that the words "by other action" do not limit its application to any specific officer or board, it must reasonably be said to include the county assessor.

In the case at bar the construction of improvements upon existing land could not have resulted in the increased valuation in question, except for assessment "action" by the county assessor which was no doubt specifically or tacitly approved by the County Board of Equalization. It seems reasonable to conclude that that action was intended to be included in the statutory phrase, "or by other action." That seems abundantly clear when we consider that a stated purpose of the statute was to relieve citizens from hardship in the area of taxation and that the basic evil to be corrected by the statute (in its application to school districts) was to prevent tax windfalls to the school districts beyond the stated needs of the districts merely because the assessed valuation of the real property in a county was substantially increased. Missouri Pacific R. Co. v. Kuehle, 482 S.W.2d 505, 509 (Mo.1972). That conclusion is further fortified by the rule that taxing statutes must be strictly construed in favor of the taxpayer and against the taxing authority.

Respondents agree that the phrase "or by other action" includes assessments by the county assessor, but they contend that such action should be limited to assessments which increase the valuation of existing improvements and not to assessment of newly constructed improvements. A logical argument could be made to the legislature for amendment of the statute in that regard because new homes and commercial construction call for increased services and expenditures by political subdivisions. However, we find nothing in the statute which supports a finding of legislative intent to so limit its application.

It is our view that the legislature intended that the rate be reduced whenever the assessed valuation is increased by 10 percent or more over the prior year's valuation, after the school districts have estimated their needs and fixed the rate of levy. The manner in which the increase occurs would seem immaterial in effectuating the legislative intent.

There was evidence offered by the intervenors to the effect that they contacted the assessor and obtained an estimate of the probable amount of increased assessment before preparing their budgets and took that into consideration in fixing their rates of levy. They say, therefore, that they did not receive an unexpected windfall and hence the reduction provision of the statute should not be applicable. We do not know whether the trial court considered that evidence in its decision because no statement of "grounds for decision" was filed. As required by law, the districts filed a written estimate with the county clerk stating the amount of money needed for the ensuing year and the tax rate (based upon the assessed valuation for the prior year) that would be levied to produce that amount. The only way the districts could have accomplished the result they now say occurred is to have stated a smaller amount for their needs in the offi-

cial estimate than the amount they considered actually necessary.

Our view is that the foregoing evidence (even if assumed to be admissible) would not change the result we have reached. The districts should not be permitted to repudiate the amount of their needs as stated in their official estimates and to now state that their estimates were intentionally incorrect and based upon information not recognized by the various statutes involved. Such a procedure would not only be a violation of those statutes but would tend to emasculate the specific reduction provision of § 137.073 and place its enforcement on a tenuous and speculative basis.

The judgments are reversed and the causes remanded with directions to enter judgments for plaintiffs for the amount of the taxes they paid under protest.

All concur.