UNION ELECTRIC COMPANY et al.,
Plaintiffs-Appellants,

v.

Earl A. TOULOUSE, Tax Collector of
Jefferson County, Missouri,
Defendant-Respondent,

v.

CRYSTAL CITY SCHOOL DISTRICT et
al., Intervenors-Respondents,

v.

JEFFERSON JUNIOR COLLEGE DIS-
TRICT, Intervenor-Respondent.

No. 59848.

Supreme Court of Missouri,
En Banc.

July 24, 1978.

Rehearing Denied Sept. 28, 1978.

Francis X. Duda, St. Louis, George E. Murray, Creve Coeur, Donald E. Ransom, James M. Bridge, Lawrence J. Bannes, William H. Ferrell, St. Louis, Walter S. Drusch, Cape Girardeau, for plaintiffs-appellants.

Robert C. Jones and Robert Hickel, Clayton, for defendant-respondent.

Harold A. Tzinberg, Clayton, for intervenor-appellant.

SEILER, Judge.

This is a consolidated appeal of six separate tax recovery cases tried in the Jefferson County circuit court. The trial court rendered a single monetary judgment in favor of the plaintiffs for an amount which was less than the total prayed for and all plaintiffs appealed. The action lies within our exclusive appellate jurisdiction because it involves the construction of § 137.073,[1] a revenue law of this state. Mo.Const., Art. V, § 3.

## I.

The taxpayers—three regulated utility companies, Union Electric Company, Laclede Gas Company and Southwestern Bell Telephone Company—and three railroads, Missouri Pacific Railroad Company, Missouri-Illinois Railroad Company and St. Louis-San Francisco Railway Company, each filed suit against the county collector to recover 1973 school taxes paid under protest pursuant to § 139.031. The cases were consolidated for trial under an agreed statement of facts with additional evidence taken on a motion for rehearing.

Intervenors-respondents are most of the school districts in or partly in Jefferson County.[2]

The final assessed value of personal property in Jefferson County for the year 1972 was $27,935,295 and for the year 1973 was $31,929,405, an increase of 14.30 percent.

Section 137.073 provides that:

"Whenever the assessed valuation of real or personal property within the county has been increased by ten per cent or more over the prior year's valuation, either by an order of the state tax commission or by other action, and such increase is made after the rate of levy has been determined and levied by the county court, city council, school board, township board or other bodies legally authorized to make levies, and certified to the county clerk, then such taxing authorities shall immediately revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy. Where the taxing authority is a school district it shall only be required hereby to revise and lower the

---

1. All citations are to RSMo 1969, unless otherwise indicated.

2. Jefferson Junior College District intervened, but did not appeal the judgment ordering a refund of all the protested tax levied by it so we make no further reference to that part of the case.

rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy, plus such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation. The lower rate of levy shall then be recertified to the county clerk and extended upon the tax books for the current year. The term 'rate of levy' as used herein shall include not only those rates the taxing authorities shall be authorized to levy without a vote, but also those rates which have been or may be authorized by elections for additional or special purposes. No levy for public schools or libraries shall be reduced below a point that would entitle them to participate in state funds."

None of the above school districts revised their original levies to comply with § 137.-073. Applying the original levies for the school districts against the 1973 valuations produced taxes of $9,163,417 or $669,554 more than the original estimate of $8,493,-863.

After the case was submitted by stipulation to the trial court for a decision, the school districts filed a motion to amend their respective answers to allege that § 137.073 violated Art. 10, § 3 of the Missouri Constitution of 1945 and was, therefore, unconstitutional.

Thereafter, the trial court entered judgment in favor of the taxpayers for $252,-501.22 (which was the amount claimed) together with any interest earned on these funds to be distributed in the amounts prayed for in the respective petitions. The judgment was also against the school districts on the issue of unconstitutionality.

In due course, the school districts filed a motion to amend the judgment or, in the alternative, for a new trial. The motion was granted by the trial judge on the sole issue whether the refund ordered by the court should be decreased to the extent of any reduction in state aid.

On this issue, § 137.073 provides in pertinent part:

"Where the taxing authority is a school district it shall only be required hereby to revise and lower the rates of levy to the extent necessary to produce from all taxable property the same amounts of taxes as previously estimated to be produced by the original levy, plus such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation."

At the rehearing, testimony was introduced over taxpayers' combined objections to the effect that each school district suffered a reduction in apportionment of state school money due to the increase in assessed value in the district for 1973. A method of calculating the revised rates of levy to recover this reduction in the apportionment of state aid was also presented.

Thereafter, the trial court adopted the formula presented by the school districts on the state aid issue, recertified the school districts' local rates, and decreased the amount of the first judgment by $54,893.07, this being the additional amount necessary to offset the districts' reduction in the apportionment of state school monies brought about by the increase in the valuation of property in the districts for 1973.

Since the school districts did not appeal the second judgment, it is conceded for purposes of this appeal that the taxing authorities (single-county and multi-county school districts) were in fact required to revise and lower their respective rates of levy as a result of an increase in the assessed valuation of personal property in Jefferson County, Missouri by 10 percent or more from 1972 to 1973 (§ 137.073). The constitutional claims have also been abandoned.

This appeal, therefore, involves a determination of the proper formula which should have been used to calculate each of the revised levies for the school districts and whether any adjustment was required as a result of a loss or reduction in state aid due to increased valuation.

## II.

■ Appellants' first contention is that where § 137.073 provides that school districts may include "such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation", that "state school moneys" contemplate only supplemental state aid under § 163.031. Because the parties specifically stipulated that none of the school district's rates would be reduced below the rate required for additional (or supplemental) state aid ($3.50), the appellants conclude that the provision of § 137.073 relied upon by the trial court and the school districts is inapplicable. They support this contention by reliance upon *Missouri Pacific Railroad Co. v. Kuehle,* 482 S.W.2d 505 (Mo.1972), a case in which an "issue concern[ed] . . . the loss in supplemental state aid which would result . . . if plaintiffs' rates were used." *Id.* at 507.

This reliance by appellants is misplaced. *Kuehle* was concerned with the meaning of the last sentence of § 137.073 which provides that "[n]o levy for public schools or libraries shall be reduced below a point that would entitle them to participate in state funds." The defendant-intervenor (county tax collector and school district) in *Kuehle* argued that "state funds" meant supplemental state aid under § 163.031, which required a minimum tax rate of $3.50 per $100.00 assessed valuation for school district qualification, and that therefore an adjusted tax under § 137.073 could not be less than $3.50. The court disagreed, determining that the earlier sentence of § 137.073, which is before us in the instant case, "obviously contemplates possible reductions in supplemental state aid and provides a means to compensate for the reduction." *Id.* at 508. In stating that § 137.073 "obviously contemplates possible reductions in supplemental state aid" the court did not say that the statute contemplated *only* such reductions. Rather, it is equally obvious on its face that § 137.073 contemplates possible reductions in *any* state aid caused by the new assessment, and provides a means of recoupment for that loss of aid. This was

the determination of *St. Louis-Southwestern Railway v. Cooper,* 496 S.W.2d 836, 841 (Mo.1973), a judgment which we reiterate today. Section 137.073 serves, in part, as a legislated scheme for the recoupment by a school district of the loss of state aid which an increase of the assessed valuation of its taxable property may occasion. It is not, in this respect, exclusively concerned with a particular state aid program (supplemental state aid) the creation of which, in 1969, it antedated by fourteen years. Laws of Mo. 1955, pp. 835–36; Laws of Mo.1969, p. 270.

## III.

■ Appellant's next contention is that the basis for the trial court's conclusion that $54,893.07 of the amounts paid under protest was due the school districts to compensate for a loss in state aid for 1973 was "opinion testimony, hearsay and unauthenticated unofficial documents", and that even if the evidence in question were admissible, the loss in state aid claimed by the school district could not have occurred until 1974 whereas their appeal deals with a 1973 tax protest, and, furthermore, say appellants, the schools could have increased their 1974–75 budgets to recoup the loss.

Appellants are overlooking certain facts peculiar to school districts, their operation, and their financing. The schools operate on a fiscal year, commencing July 1, § 160.041, while taxes on real and personal property are assessed and levied on a calendar year basis, so there is an overlap between the two. The school district budget for the ensuing year must be adopted not later than June 30, § 67.030. Schools obtain part of their money from local taxes which are generally not paid until near the close of the calendar year and do not become delinquent until January 1. §§ 140.010 and 140.730. Distribution of state school aid, whether basic or supplemental, is based on an application for state aid, which the school district must file not later than June 30, § 163.081, from which the amount of state aid is calculated. §§ 163.031, 165.111. State aid is paid in four installments—September 15, December 15, March 15 and May 15. §§ 163.081–163.082, RSMo Supp.1975.

Appellants also overlook the fact that whenever there is an increase in valuation, there will be a loss to the school district in basic state aid. This comes about by virtue of paragraph 2 of § 163.031, prescribing deductions which are to be made from the minimum guarantee for each district. One such deduction required is an amount derived from a tax of $1.25 for each $100.00 of the completed assessed valuation of the property in the district for the preceding year equalized to 30 percent. Reduced to its simplest form, if we let L stand for the loss in aid and I stand for the increased valuation of personal property between 1972 and 1973, equalized to 30 percent, the formula would be:

$$L = \frac{I}{100} \times \$1.25.$$

Thus, the greater the assessed valuation, the larger the deduction. Section 137.073, as previously said, permits the school board, in lowering the rate of levy, to include such additional amounts as may be necessary approximately to offset the district's reduction in the apportionment of state school moneys due to its increased valuation. What this means in practice is that instead of lowering the local rate to produce substantially what would have been produced from local taxation at the original rate, the school board is permitted to use a rate which will produce the original amount plus "such additional amounts" necessary to make up from local taxes the amount it is losing in state aid. The result thus brought about by the statute is that more is collected locally and less collected from the state. But this does not mean there is thereby any windfall for the school district.

An expert witness, Dr. Henry, whose qualifications are discussed later herein, worked out and presented to the court the amount of reduction in state aid for each of the districts resulting from the increased valuation, what the total amount needed would be for each district to produce substantially the same amount of taxes as previously estimated plus the additional amounts needed to offset the reduction in state aid, and what the revised rate would be to do so. The trial court adopted these calculations and ordered the tax rates for 1973 recertified accordingly.

The approach urged by the appellants—that the school district should somehow delay in recoupment or that there really is no loss to the school district—is not that contemplated by the statute, by which it is understood that there is a loss in state aid and that it is to be added to the amount of taxes which would have been produced from the original tax rate. A new tax rate that would produce essentially the same sum is then determined and applied.[3] *See*

3. To illustrate, take the DeSoto No. 73 School District, for example. It has territory in Jefferson, St. Francois and Ste. Genevieve counties. The total assessed valuation in 1972 was $12,426,989.00; the total assessed valuation for 1973 was $13,152,374.00; the total increase in assessed valuation from 1972 to 1973 was $725,385.00. In calculating state aid under § 163.031, it is necessary that the assessed valuation be "equalized to thirty per cent." The ratio of assessment established by the state tax commission for the year 1973 for Jefferson County was 30.16, for St. Francois County, 30.09, and for Ste. Genevieve County, 30.00.

To equalize the assessed valuation to thirty percent, the increased assessment must be multiplied by thirty and divided by the ratio established by the state tax commission. In the example for DeSoto No. 73 School District, the assessed valuation for 1973 when thus equalized to thirty percent amounts to $721,537.00.

Section 163.031 provides that "[f]rom the minimum guarantee for each district there shall be deducted the amount derived from a tax of one dollar and twenty-five cents for each one hundred dollars of the completed assessed valuation of the property . . . ." Thus, to determine the loss in state aid which would result to the DeSoto No. 73 School District from the increase in assessed valuation in the year 1973, the assessed valuation equalized to thirty percent, $721,537.00, must be divided by one hundred dollars and then multiplied by a dollar and a quarter. These calculations produce a figure of $9,019.00, which is the amount of the reduction in state aid for the DeSoto No. 73 School District as a result of the increased valuation in 1973.

Under § 137.073 this amount of loss in state aid must be added to the amount of taxes previously estimated to be produced by the original levy. The tax estimated to be produced by the original levy for the DeSoto No. 73 School District was $614,296.00, which, when added to the reduction in state aid, gives a total of $623,315.00. In order to determine the rate necessary to produce this $623,315.00 to which

*Missouri Pacific Railroad Co. v. Kuehle,* 482 S.W.2d at 508. Under appellants' approach, the relief provided by § 137.073 would be illusory, because by the time application for the 1974–75 school year was due it would be too late to make up the loss by adjusting the 1973 levy. The 1973 taxes would long since have been levied and paid and there would be no way to turn the clock back. If the language of § 137.073 reading "plus such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state moneys due to its increased valuation" is to have any practical meaning or application for the school district, it must be read to provide for recoupment in the year of the increased valuation of whatever reduction in state aid does later occur. Since the 1973 increased valuation figure would not be used in the deduction formula until the June 30, 1974 application, and since the revised levy is to be made "immediately", and the new lower rate is to be "extended upon the tax books for the current year", it follows that the school district must make the recoupment from 1973 levy. That is what the trial court required to be done here.

The appellants' suggestion that the school district wait until the 1974–75 school year and then increase the 1974 levy enough to make up the loss in state aid brought about by the increased valuation in 1973, is unacceptable in light of § 137.073, requiring, as it does, that the levy be adjusted in the year when the 10 per cent or more increase in valuation occurs. The legislature may well have considered it more equitable and realistic for whatever adjustments were required to be accomplished in one revised levy, rather than lowering the levy one year and raising it the next.

In addition, the school district is under stringent limitations as to maximum levy rates for school taxes. Mo. Const. Art. X,

§ 11(b) and (c). It is possible that the school district would need the full extent of its authorized levy in the 1974–75 school year to meet its operating and incidental expenses with no room left to raise the levy the additional amount required to make up the loss in state aid brought about by the 1973 increase in valuation.

Appellants' contentions, if sustained, would destroy the school district's statutory right of recoupment of the amount of state aid lost by the occasion of an increase in the assessed valuation of taxable property. Such a result would violate the clear legislative intendment of § 137.073, which we are neither inclined nor entitled to disturb. We overrule the contention.

■ Returning to the appellant's objection that the basis for the trial court's decision was opinion testimony, etc.: The opinion testimony referred to above came at the rehearing from the person of Dr. Ray Henry, who qualified as an expert in school finances, including matters of state aid and determination of rates of levy by local school districts. It does not take much delving into the subject of the school laws, local taxes, and the means by which school boards obtain their operating funds to realize the subject is one where expert testimony can be appropriate and helpful. "The chief value of expert evidence lies in the fact that the witness possesses superior knowledge of the subject under consideration . . . '[T]he subject must be . . one of which observation and experience have given the opportunity and means of knowledge which exists in reason rather than descriptive facts, and, hence cannot be intelligently communicated to others not familiar with the subject so as to possess themselves of a full understanding of it.' " *De Donato v. Wells,* 328 Mo. 448, 41 S.W.2d 184, 187 (1931).

Dr. Henry had for six years been president of Jefferson Junior College, of Hills-

the DeSoto No. 73 School District is entitled, we must divide by the 1973 assessed valuation of $13,152,374.00, and then multiply the quotient by $100.00. This calculation produced an

adjusted tax rate for the DeSoto No. 73 School District for the year 1973 of $4.74 per one hundred dollars assessed valuation.

boro, and for fourteen years prior thereto had been superintendent of schools in Missouri school districts, first at Gideon and then at Farmington. This work necessarily entailed knowledge and experience on his part in the preparation of school budgets and estimates, applications for state aid, and determination of tax rates. In addition, Dr. Henry had taught courses in school finance and had worked with the legislature on school appropriation matters and in revision and clarification of the school statutes.

The data and material with which Dr. Henry worked preparing the exhibits and on which he based his various conclusions and opinions are all to be found or fairly implied from the facts in the record. We hold the trial court properly overruled the objections to Dr. Henry's testimony.

Judgment affirmed.

MORGAN, C. J., and BARDGETT, FINCH, DONNELLY and RENDLEN, JJ., concur.

SIMEONE, J., not participating because not a member of the court when cause was submitted.