SOUTHWESTERN BELL TELEPHONE COMPANY, et al., Appellants,

v.

James P. MITCHELL, Director of Revenue, Jackson County, et al., Respondents,

v.

CENTRAL SCHOOL DISTRICT NO. 38, et al., Intervenors-Respondents,

v.

CITY OF KANSAS CITY, Missouri, Intervenor-Respondent.

No. 62474.

Supreme Court of Missouri,
En Banc.

April 6, 1982.

Joe M. Williams, Deputy Co. Counselor, D. Book Bartlett, Aaron A. Wilson, City Atty., John F. Ingraham, Asst. City Atty., Kansas City, Rufus Burrus, Wm. C. Paxton and Steven C. Block, Independence, Donald C. Earnshaw, Lees Summit, for defendants-respondents.

David M. Claycomb, Donald C. Bollard, III, Irwin E. Blond and Stephen G. Mitchell, F. Michael Seltzer, L. B. Seck, John W. Kelly, Jr., Charles E. Hoffhaus, Jas. M. Beck, Gregory B. Allen and Jill D. Vick, Leonard J. Johnson, Charles W. Hess, Jr., Judith P. Rea, Kansas City, for appellants.

BARDGETT, Judge.

Appellants, twenty-four railroad, utility, and manufacturing taxpayers,[1] (taxpayers) paid portions of their 1975 property taxes to Jackson County under protest.[2] They timely filed separate suits in the Circuit Court of Jackson County pursuant to § 139.031, RSMo 1969, to recover the amount of taxes paid under protest on the ground that respondent taxing authorities[3] failed to comply with § 137.073, RSMo 1969. The cases

---

1. The appellants in the instant care are Southwestern Bell Telephone Company; Armco Steel Corporation; Mobay Chemical Corporation; Atchison, Topeka & Santa Fe Railway Company; Butler Manufacturing Corporation; Kansas City Southern Railway Company; Kansas City Terminal Railway Company; Business Men's Assurance Company; Faultless Starch Company; Kansas City Power & Light Company; Amoco Oil Corporation; Amoco Pipeline Company; Chicago, Milwaukee, St. Paul & Pacific Railway Company; United Telephone Company of Missouri; Montgomery Ward & Company, Inc.; Union Pacific Railroad Company; Gailoyd Enterprises Corporation; Missouri Pacific Railroad Company; St. Louis, San Francisco Railroad Company; Missouri Public Service Company; Hallmark Cards, Inc.; Gas Service Company; Illinois Central Gulf Railroad Company; and Burlington Northern Railroad Company.

2. The taxes paid under protest by the twenty-four taxpayers aggregated $1,432,830.86. Although the stipulated amount was $1,433,-470.55, taxpayers disclose that when their individual protested taxes are added together the former amount is the correct figure.

3. The taxing authorities include Jackson County, the City of Kansas City, and all twelve school districts situated wholly or partially within Jackson County.

were consolidated for trial and a single judgment was rendered. The central issue is whether the taxing authorities of Jackson County revised and lowered their levy rates in 1975, as required by § 137.073, to the extent necessary to produce from all locally assessed taxable property substantially the same amount of taxes as previously estimated to be produced by the original levies. Because this appeal involves construction of a state revenue law, this Court has jurisdiction pursuant to Mo.Const. art. V, § 3.

The facts are stipulated.

The taxing authorities of Jackson County fixed their respective rates of levy and certified them to the Jackson County clerk. The average school levy was also fixed. The levies were approved by the County Legislature on August 11, 1975. Thereafter, on August 22, 1975, the assessed valuation of real property in Jackson County was increased more than 10% over the final 1974 real property valuation[4] by an order of the State Tax Commission, thus triggering the roll-back provision of § 137.073. The taxing authorities, except the City of Kansas City, proceeded after August 22, 1975, to adjust and certify revised rates based on the total assessed valuation of all locally assessed taxable property in Jackson County on August 22, 1975, of $1,953,306,618. Computer adjustments to the total assessed valuation continued through September and into October 1975 when all tax statements were computed and issued on the basis of the then assessed final valuation of all taxable property. The total assessed valuation of all locally assessed taxable property as certified on October 29, 1975, had increased to $1,968,207,479. This represents an additional increase of $14,900,861 over the August 22, 1975, increase. The final cutoff of input and corrections to the computerized

assessment rolls which produced this October 29, 1975, figure was on October 3, 1975. After October 3, the Jackson County computer began to generate the tax bills by extending and levying the various levy rates to the computerized assessment rolls.

On May 22, 1980, the trial court entered judgment in which it found that the taxing authorities had immediately revised levies so as to produce substantially the same amount of taxes as previously estimated to be produced by the original levies and that § 137.073, RSMo 1969, was inapplicable to the City of Kansas City.

Although taxpayers' contentions vary with respect to the fourteen respondent taxing authorities, the arguments focus on the construction of four phrases in § 137.-073:

> [S]uch taxing authorities shall immediately revise and lower the rates of levy to the extent necessary to produce from [1] *all taxable property* [2] *substantially the same amount of taxes* [3] *as previously estimated to be produced* by the original levy . . . , [4] *plus such additional amounts as may be necessary approximately to offset . . . the apportionment of state school moneys due to its increased valuation* [where the taxing authority is a school district]. (Emphasis added.)

In addition, taxpayers argue that § 137.073, RSMo 1969, is applicable to the City of Kansas City, Missouri.

## APPLICABILITY OF § 137.073 TO CITY OF KANSAS CITY

Taxpayers[5] contend that the City of Kansas City, Missouri, was required to revise its levy of $1.52, which it did not do, because the inclusion of "city counsel" in

---

4. The aggregate assessment of locally assessed real property increased by 11.69%.

5. Those corporate taxpayers who protested a portion of their Kansas City distributable property taxes include
 Southwestern Bell Telephone Company;
 Atchison, Topeka & Santa Fe Railway Company;
 Kansas City Terminal Railway Company;
 Kansas City Power & Light Company;

 Amoco Oil Company;
 Chicago, Milwaukee, St. Paul & Pacific Railway Company;
 Union Pacific Railroad Company;
 Missouri Pacific Railroad Company;
 St. Louis, San Francisco Railroad Company;
 Missouri Public Service Company;
 Illinois Central Gulf Railroad Company; and
 Burlington Northern Railroad Company.

§ 137.073, RSMo 1969, as one of the taxing authorities which must revise its levy when the operation of the statute is invoked, make the roll-back provision of the statute applicable to Kansas City. The City of Kansas City argues, and the trial court found, that § 137.073 has no applicability to constitutional charter cities. In essence, the City maintains that § 137.073 applies only to taxing authorities which use county assessments and that the City of Kansas City does not use them except with respect to railroad and utility properties. Resolution of this issue probably will have little value for future determinations. The City of Kansas City admits and it appears that the legislature in 1979 included all taxing authorities within the operation of amended § 137.073. *See* S.B. 247, 333 & 254, 1979 Laws of Mo. 322 (codified at §§ 135.010 —.030, 137.073, RSMo Cum.Supp.1981).

It is unnecessary, however, to reach the issue whether § 137.073, RSMo 1969, applies to constitutional home-rule charter cities because the facts of this case mandate that at least the result reached by the trial court be affirmed.

■ The State Tax Commission inter-county equalization order increasing the real property valuation by 11.69% applied to county assessed real property, including locally assessed utility and railroad properties within the city limits of Kansas City,[6] with respect to county assessor assessments. This Tax Commission order, however, was only applicable to *county* assessments of real property, and not to *municipal* assessments of real property within the respective municipality. In fact, the City of Kansas City *does* assess its own local property as provided in its charter and granted by Mo. Const. art. X, § 11(a). The assessment of locally assessed railroad and utility properties in the City may be the same or less than the County assessment. *Id.; Naegele Outdoor Advertising Co. v. Kansas City,* 509 S.W.2d 128 (Mo.1974). It appears in the stipulation that Kansas City voluntarily uses County assessments for and authorizes

the County to collect its taxes on locally assessed railroad and utility properties. Kansas City could, however, make its own assessments and send out its own tax bills for municipal taxes on local railroad and utility properties. Mo.Const. art. X, § 11(a). *See also* Kansas City, Mo., Municipal Code § 32.21 (1967).

■ Even assuming that inclusion of "city counsel" in § 137.073, RSMo 1969, makes the statute applicable to Kansas City, the operation of § 137.073 is triggered only by increases in locally assessed real or personal (not distributable) property by at least 10%. There has been no showing that the total of the *locally assessed real or personal taxable property* subject to assessment by the City increased by over 10%. In the absence of such an increase on locally assessed property subject to assessment by Kansas City, the statute does not require a roll back of levies. The point is ruled against taxpayers and in favor of respondent City of Kansas City.

## ALL TAXABLE PROPERTY

The issue here is which assessed valuation of "all taxable property" is to be used as the base to compute the revised rates of levy—the August 22, 1975, valuation or the October 29, 1975, valuation. The October 29, 1975, valuation was the final one and was the one used to compute general taxpayers' bills on locally assessed property.

On August 22, 1975, the Jackson County clerk, under order of the State Tax Commission, certified total taxable property to the various taxing authorities in Jackson County. This August 22d certification represented more than a 10% increase in the valuation of locally assessed real property in Jackson County, thereby triggering § 137.073. Using the new August 22d assessed valuation, the taxing authorities revised and lowered their levies, except Kansas City, so as to raise substantially the same amount of taxes as previously estimated to be produced by the original levies.

---

**6.** The increased assessment of real property in Jackson County, as stipulated by the parties, "was done by uniformly increasing the assessment of each such property by 11.69%."

Taxpayers assert that the October 29th assessed valuation, which was higher than that on August 22,[7] should have been used to compute the revised levies. They reason that October 29 was the last date in 1975 when official valuation certificates were issued to taxing authorities; that it was the figure on which all taxpayers' 1975 tax statements which were received from Jackson County· were actually computed; and that it was the date of the final assessed valuation for the 1975 tax year. Taxpayers argue that prior decisions of this Court support the use of the *final* assessed valuation as the figure on which the reduction of a levy pursuant to § 137.073 is to be computed. Therefore, taxpayers urge this Court to declare the October 29th assessed valuation to be the one cn which to determine compliance with § 137.073's roll-back provision.

Respondents contend that the statute must be given its plain meaning. The statute mandates that taxing authorities "shall immediately" revise their levies. Thus, when a 10% increase or more in assessed valuation of real or personal property occurs, the taxing authorities must revise their levies immediately based on the valuation which triggered operation of the statute. Respondents argue that this is the only reasonable interpretation especially since revising the levies and computing the tax bills on October 29 would have resulted in missing the deadline for sending tax bills. In addition, they argue the statute only requires that the amount of taxes produced be substantially the same as those estimated, originally or by authorized amendment, and this requirement has been met whether the October 29th or August 22d figures are used. In fact, respondents say the taxes actually produced by the revised levies have

been less than those originally estimated and, even if the October 29th assessed valuation had been used, much less revenue than needed would have been produced.

Taxpayers counter by arguing that if "shall immediately" is given the interpretation urged by respondents, taxing authorities can time their revision of levies so as to avoid the roll back intended by the statute and assess more taxes than are needed. In other words, as soon as a 10% increase was reached, taxing authorities could revise their levies and fulfill their statutory duty even though the *final* assessed valuation of all taxable property greatly exceeded the 10% increase. Since the purpose of the statute is to prevent excessive taxation on citizens and windfalls to taxing authorities, taxpayers contend that the only way to effectuate that purpose is to interpret the phrase "all taxable property" as referring to final assessed valuation of locally assessed property because that is the figure on which taxpayers' taxes are computed.

Both taxpayers and several respondent-school districts attempt to buttress their respective positions by referring to the taxes *actually* produced by the revised levies. These figures obfuscate the issue. The statute's focus is not to provide a vehicle to recoup property taxes by determining years later whether the revised levies *actually* produced substantially the same amount of taxes as previously estimated.

 The statute is designed, as it must, to operate prospectively by requiring taxing authorities at the time they revise their levies to make certain they reap no windfall of taxes merely because the valuation of locally assessed real or personal property increases by 10% or more.[8] As evidenced by

---

7. The August 22d total assessed valuation of all locally assessed taxable property in Jackson County was $1,953,306,618, while that of October 29 was $1,968,207,479—an increase of $14,900,861.

8. As this Court declared in *Missouri Pac. R. R. v. Campbell*, 502 S.W.2d 354 (Mo.1973):
 [A] stated purpose of the statute was to relieve citizens from hardship in the area of taxation and that the basic evil to be corrected by the statute (in its application to school

districts) was to prevent tax windfalls to the school districts beyond the stated needs of the districts merely because the assessed valuation of the real property in a county was substantially increased.... That conclusion is further fortified by the rule that taxing statutes must be strictly construed in favor of the taxpayer and against the taxing authority.
*Id.* at 358 (citation omitted).

the emergency clause of § 137.073 which made the Act effective on passage,[9] § 137.-073's purpose is to relieve taxpayers from taxation hardship that occurs merely because the assessed valuation increases by 10% or more. In order to fulfill this purpose of the statute, § 137.073 would require revision of levies prior to the time taxpayers had to pay taxes, because it was the *taxpayers' tax bills* that were of concern to the legislature. Consequently, the figures which taxing authorities must use and which guide a court's determination of final compliance with the statute are those that are available *when* the rates of levy are reduced and *prior* to the issuance of tax bills. As this Court observed in *Southwestern Bell Tel. Co. v. Hogg*, 569 S.W.2d 195 (Mo. banc 1978):

> "[Taxing authorities] must have the assessed valuation and the aggregate amount of money to be raised before they can fix the rate of levy. The rate of levy is always the last factor to be determined, and to be obtained as a quotient, the assessed valuation being the divisor and the amount of taxes the dividend."

*Id.* at 199 (quoting with approval 30th Annual Report of the Proceedings and Decisions of the State Tax Commission 30 (1975)). Therefore, once a taxing authority has set a levy and § 137.073 is triggered, it must use the amount of money previously estimated and the increased valuation of locally assessed property in order to determine mathematically the new levy calculated to produce substantially the same amount of taxes. *Id.* at 201. It seems clear that with both the statute's prospective application and the need to estimate in the most accurate manner whether the revised levy will produce substantially the same amount of taxes as previously estimated, *it*

*is necessary to use the valuation of locally assessed property, not distributable property,* on which the general *taxpayers' taxes for such property are calculated, i.e.,* final assessed valuation of all locally assessed taxable property, and the Court so holds. This is consistent with this Court's holdings in *Southwestern Bell Tel. Co. v. Feuerstein,* 529 S.W.2d 371, 373[3] (Mo.1975), and *Southwestern Bell Tel. Co. v. Hogg, supra,* 569 S.W.2d at 198–200[1]. Taxpayers are correct in their assertion that the final assessed valuation of locally assessed property is the figure that must be used in measuring compliance with the statute. In the instant case, the assessed valuation of October 29, 1975, and not August 22, 1975, is the one that must be used.

## TAXES PREVIOUSLY ESTIMATED TO BE PRODUCED

Taxpayers contend that several taxing authorities, Jackson County and Kansas City School District No. 33, set their taxes estimated to be produced higher than the stated need in their budgets; that several school districts and Jackson County used collection factors in calculating the estimate of taxes necessary to be produced; and that the same taxing authorities revised their levies under § 137.073 using collection factors. Taxpayers' various arguments can be summarized as follows: certain taxing authorities calculated improperly their original estimates of need or improperly calculated their revised levies.

▪ Section 137.073 is not a vehicle to test the propriety or legality of a taxing authority's determination or procedure for determination of how much money it needs in order to operate. The operation of the statute, and compliance with it, is focused

---

**9.** In fact, the legislature expressly recognized one purpose of the original Act in the emergency clause of § 137.073. The emergency clause provided:

> Emergency.—Because the state tax commission has announced that it is going to order a large increase in the assessed valuations of property in many counties in this state which will result in hardship for the citizens of this state unless the rate of levies

are correspondingly reduced, and because the present law does not adequately protect the people of this state, and because this act is necessary for the immediate preservation of the public peace, health and safety of the inhabitants of this state, an emergency exists within the meaning of the constitution, and this act shall be in full force and effect from and after its passage and approval. S.B. 286, § 2, 1955 Laws of Mo. 836.

on determining whether a levy is rolled back to a level necessary to produce substantially the same amount of taxes as previously estimated to be produced after the 10% increase in valuation of locally assessed property is reached.[10] A suit pursuant to § 137.073 simply does not look behind the estimate of need or the taxes originally estimated to be produced. Instead, the taxes previously estimated to be produced is a starting point of the statute. *See* notes 8 & 9 *supra*.

With respect to county taxing authorities, § 137.055, RSMo 1969, requires that

[a]fter the assessor's book of each county, except in the city of St. Louis, shall be corrected and adjusted according to law, but not later than September first, of each year, *the county court shall ascertain the sum necessary to be raised for county purposes, and fix the rate of taxes on the several subjects of taxation so as to raise the required sum, and the same to be entered in proper columns in the tax book.* (Emphasis added.)

This is what Jackson County did. The parties stipulated:

On August 11, 1975 the County Legislature by Ordinances Nos. 293 to 300 inclusive *approved and adopted the original property tax levies for all taxing jurisdictions* within Jackson County ... *and ordered that such levies be extended on the tax books of the county....* All such levy rates were at that time established at a lawful level. *The Jackson County, Missouri levy thus fixed at $1.56 was then estimated by county officials to produce* from the then assessed valuation of all taxable property gross *tax revenues in the sum of $28,592,497....* (Emphasis added.)

Whether the taxes estimated to be produced by the taxing authority must be the same amount as its budgeted need or is in contravention of the budget is not an issue in a § 137.073 suit. And using the taxes previously estimated to be produced with the October 29th final assessed valuation of all taxable property, this Court finds that the $1.46 revised levy of Jackson County complied with § 137.073.

The question of what figure constitutes the taxes previously estimated to be produced is relatively simple with regard to school districts. Section 164.011, RSMo Cum.Supp.1975, is the statutory mechanism by which school districts must certify the taxes necessary to be produced (estimate of need) to the county clerk. This Court has implicitly recognized that this is the figure used in § 137.073 suits against school districts. *See, e.g., Missouri Pac. R. R. v. Campbell*, 502 S.W.2d 354, 357 (Mo.1973); *St. Louis-Southwestern Ry. v. Cooper*, 496 S.W.2d 836, 839 (Mo.1973). *Accord, Southwestern Bell Tel. Co. v. Bond*, 595 S.W.2d 365, 367–68 (Mo.App.1980). Taxpayers argue, however, that school districts are precluded from using collection factors in determining their estimates of need, citing *Southwestern Bell Tel. Co. v. Feuerstein, supra.*

In *Feuerstein*, the school districts resisted a roll back of their levies under § 137.073, and asserted that even if a reduction was necessary then the collection factors which were used to determine the original estimates of taxes to be produced should be used to figure the revised levies. This Court did not allow the school districts to avoid the operation of the statute and held the districts to the estimates of need certi-

---

**10.** It should be pointed out that in this case all levies were set and certified prior to the time real property valuation increased by more than 10%, and the opinion proceeds on this premise. It should not be read to indicate that § 137.073 does not operate when levies are first set after the assessed valuation increases by more than 10% over the previous year's valuation. As this Court has previously indicated, if the valuation increase takes place prior to the setting of the original levy, then the first levy must be computed on the basis of the increased valuation or else the rate of levy must be revised on the basis of the increased valuation. This Court has indicated that the purpose of the statute may not be defeated simply because the original levy is set after the increase in assessed valuation occurs. *See, e.g., Southwestern Bell Tel. Co. v. Hogg, supra; Southwestern Bell Tel. Co. v. Feuerstein, supra; Missouri Pac. R. R. v. Campbell*, 502 S.W.2d 354 (Mo.1973).

fied by them. Further observations were made concerning the school districts utilizing collection factors in the makeup of their estimates of need, but the Court's determination on that point was premised on the finding that the estimates of need were the amounts certified and had been stipulated to by the parties. The point, as it exists in this case, was not at issue in *Feuerstein*.[11]

In the instant case, the estimates of need set forth in the school districts' § 164.011 forms filed prior to the time they were required to revise their levies are the figures constituting the taxes estimated to be produced and are the amounts which the revised levies should substantially produce (plus such amounts to offset any reductions in state aid).

The Court holds that actions under § 137.073 may not include issues that go to the makeup of taxing authorities' budgets or the propriety of estimates of need. If taxpayers desire to question procedures employed by taxing authorities in the budgetary process, taxpayers will have to proceed in some other manner because they cannot base a suit under this statute on those considerations. The point is overruled.

## PRODUCE SUBSTANTIALLY THE SAME AMOUNT OF TAXES

Taxpayers contend that the trial court's error as to valuation data of all taxable property and taxes previously estimated to be produced resulted in the revised levies not producing substantially the same amount of taxes as previously estimated to be produced. Since this argument is premised on the previous two contentions, prior resolution of those issues renders it unnecessary to consider this point further. It need only be noted that a revised levy calculated to produce substantially the same

amount of taxes as previously estimated is determined mathematically based on the final assessed valuation and applicable estimate of need plus any adjustment for the reduction in state aid for a school district.

## ADDITIONAL AMOUNTS TO OFFSET APPORTIONMENT OF STATE SCHOOL MONIES

Taxpayers contend that there would be no reduction in state aid if their calculations of the correct rates of levy were used. But, taxpayers say, in any event, the school districts waived any objections to taxpayers' rates of levy by not offering evidence on state-aid reduction and preserving the issue at trial.

The instant case had been submitted to the trial court for decision prior to this Court's opinion in *Union Elec. Co. v. Toulouse*, 572 S.W.2d 167 (Mo. banc 1978). Any finding as to a reduction in state aid was rendered unnecessary by the trial court's judgment upholding all taxing authorities' revised rates of levy. Consequently, whether there was a reduction in state aid to the school districts must still be considered because

> [w]here the taxing authority is a school district it shall only be required hereby to revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy, *plus such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation.*

§ 137.073, RSMo 1969 (current version at § 137.073, RSMo Cum.Supp.1981) (emphasis added).

---

11. The same is true in *Missouri Pac. R. R. v. Campbell, supra*, also cited by taxpayers. In that case, the school districts were trying to avoid operation of § 137.073 by contending that they had anticipated the increase in assessed valuation and had taken that into account in calculating their estimates of need and original levies. The Court noted that "[t]he only way the districts could have accomplished the result they now say occurred is to

have stated a smaller amount for their needs in the official estimate than the amount they considered actually necessary." 502 S.W.2d at 358-59. This Court held the districts to their original estimates of need as stated in the § 164.011 forms, stating, "The districts should not be permitted to repudiate the amount of their needs as stated in their official estimates. . . ." *Id.* at 359.

Unfortunately, due to the lack of necessary information and discrepancies in the record, the case must be remanded as to certain school districts.[12] In an effort to aid the trial court, however, several observations must be made.

■ *Toulouse*, recognizing the prospective nature of § 137.073, provided a formula to determine the reduction in state aid and the resulting levy [13] without regard to hindsight figures of how much state aid was actually received in the year in question. *See Union Elec. Co. v. Toulouse, supra*, 572 S.W.2d at 171 & n.3. The correct school levy for each school district and correct average rate of levy for all twelve school districts are multiplied by the October 29th valuation of the appropriate properties of each taxpayer [14] in order to determine the correct tax liability of each taxpayer. The resulting refunds, if any, together with the interest earned on the amount of money actually refunded,[15] shall be made to the taxpayers.

The judgment is affirmed with respect to Jackson County, the City of Kansas City and Lone Jack C–6 School District, and reversed and remanded as to all other respondent school districts with directions to proceed to determine, consistent with this opinion, whether or not refunds are due and if so to enter judgment for the same.

SEILER, WELLIVER, HIGGINS, JJ., and STOCKARD, RUDDY and WEBBER, Special Judges, concur.

DONNELLY, C. J., and RENDLEN and MORGAN, JJ., not participating.

12. The parties agree that Lone Jack C–6 school district's levy is correct. The district's levy is of importance only with regard to the calculation of the average school levy. The cause, however, is reversed and remanded as to the other eleven school districts.

13. All parties agree that no school district's rate of levy would be reduced below that level necessary to participate in state funds.

14. Taxpayers tacitly admit that the assessed valuation of their various properties shown on their 1975 tax bills is the correct assessment of their properties.

15. The parties agree that the protested taxes were placed in interest-bearing accounts. As such, taxpayers are entitled to the interest earned on the amount of protested taxes actually refunded. *Southwestern Bell Tel. Co. v. Feuerstein, supra*, 529 S.W.2d at 374.