SOUTHWESTERN BELL TELEPHONE
CO. et al., Plaintiffs-Respondents,

v.

Paul R. FEUERSTEIN, etc.,
Defendant-Respondent,

and

Francis Howell School District et al.,
Intervenors-Appellants.

Nos. 58793, 58794.

Supreme Court of Missouri,
Division No. 1.

July 14, 1975.

Motion for Rehearing for Transfer to
Court En Banc Denied Sept. 8, 1975.

Lawrence J. Bannes, Asst. Gen. Counsel, Laclede Gas Co., St. Louis, for plaintiff-respondent Laclede Gas Co.

George E. Murray, Jr., St. Charles, for plaintiff-respondent Southwestern Bell Telephone Co.

William H. Ferrell, Francis X. Duda, Keefe, Schlafly, Griesedieck & Ferrell, St. Louis, for respondent Union Electric Co.

Robert Hickel, Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, for intervenors-appellants.

SEILER, Judge.

This case is a consolidation of two appeals brought by school districts in St. Charles County, Missouri, contesting the order of the trial court which compelled them to return certain property taxes paid under protest by plaintiffs to the county. We have jurisdiction because our decision turns on the construction to be given Sec. 137.073, RSMo 1969, V.A.M.S.,[1] a revenue law of this state, Art. V, Sec. 3, Mo.Const.1945, V.A.M.S.

The facts are presented by the stipulations of the parties. In 1972, the total assessed valuation of real property in St. Charles County was increased from the year 1971 by 12.25%. Approximately 13% of this increase resulted from reassessment, and approximately 87% of the increase resulted from new construction in the county. Plaintiffs contended at trial that the rates of levy set by the school districts in St. Charles should be reduced pursuant to Sec. 137.073, which reads as follows:

"Whenever the assessed valuation of real or personal property within the county has been increased by ten percent or more over the prior year's valuation, either by an order of the state tax commission or by other action, and such increase is made after the rate of levy has been determined and levied by the county court, city council, school board, township board or other bodies legally authorized to make levies, and certified to the county clerk, then such taxing authorities shall immediately revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy. Where the taxing authority is a school district it shall only be required hereby to revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy, plus such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation. The lower rate of levy shall then be recertified to the county clerk and extended upon the tax books for the current year. The term 'rate of levy' as used herein shall include not only those rates the tax-

---

1. All statutory references are to RSMo 1969, V.A.M.S.

ing authorities shall be authorized to levy without a vote, but also those rates which have been or may be authorized by elections for additional or special purposes. No levy for public schools or libraries shall be reduced below a point that would entitle them to participate in state funds."[2]

■ The trial court held that reductions in the rates of levy set by the school districts were required. The first question presented on appeal is whether or not the increase in assessed valuation was the result of "other action" as indicated in the statute, it being stipulated that such increase was not by order of the State Tax Commission. Appellants contend that the percentage of the 12.25% increase in valuation attributable to new construction in the county is not such "other action" as would require a reduction in the rates of levy, and that the statute contemplated only the prevention of windfalls to the taxing authority which are the result of reassessment. This precise issue, however, was decided to the contrary in *Missouri Pacific Railroad Co. v. Campbell,* 502 S.W.2d 354 (Mo.1973). Appellants' additional arguments, based on rules of statutory construction, are not so compelling as to warrant a reversal of the position taken in *Campbell*; as said therein, there is nothing in the statute to indicate that the legislature intended to exclude those increases in valuation which result from new construction in the county. Id., 502 S.W.2d at 358.

■ Next, the appellant school districts contend that the increase in assessed valuation was made prior to the time when the rates of levy were determined, bringing into question that portion of Sec. 137.073 which requires a revision of the rates of levy when ". . . such increase [in assessed valuation is] made after the rate of levy has been determined and levied by the . . . school board . . ." Al-though the parties attempt to establish various pertinent dates to support their respective contentions, it is not necessary to determine the exact day on which the increase in assessed valuation was "made" in this case. The intent of Sec. 137.073 is clear: where the school boards determine a rate of levy calculated to meet their estimated revenue needs, and it is thereafter found that such rate of levy will produce more revenue than that estimated because of an increase of 10% or more in ‑assessed valuation, the levies must be adjusted downwards to produce substantially the same amount as that originally estimated. In this case, the school districts involved would receive approximately $800,000 more in tax revenues than their estimated needs if their original rates of levy were allowed to be applied to the 1972 valuation, precisely the kind of windfall which Sec. 137.073 seeks to prevent. Appellants ought not to be heard saying that their rates of levy were determined "after" the increase in valuation was made, when their original estimated needs were not based on the increased valuation.

■ Appellants also argue they were "aware generally" of the increase in valuation and "since most of the increase was the result of new construction, bringing more children to them, that, in setting their rates, they considered both the anticipated increase in assessed valuation and the anticipated increase in school population." This argument was also laid to rest in *Campbell*, supra, at 359:

"The districts should not be permitted to repudiate the amount of their needs as stated in their official estimates and to now state that their estimates were intentionally incorrect and based upon information not recognized by the various statutes involved. Such a procedure would not only be a violation of those statutes but would tend to emasculate the specific reduction provision of § 137.073 and place its enforcement on a tenuous and speculative basis."

2. The parties have stipulated that the rate reduction prayed for by plaintiffs would not cause such a result.

Next, appellants contend that even if a reduction in the rates of levy is required, the amount of the reduction calculated by the trial court is incorrect as to three of the school districts, because the estimated needs of these districts were based on a less than 100% collection rate while the trial court assumed a 100% collection rate. We note first that the calculations made by the trial court to accomplish the rate reductions were based on those submitted by the plaintiffs and stipulated to be "true and correct" by the appellants, and it would seem that they are precluded from disputing these figures on appeal. We note further that there is no statutory authority which allows a school district to estimate and assume a rate of collection and state their needs on that basis, and again, as stated in *Campbell*, supra, at 359, the school districts should not be allowed to state the amounts of their needs "upon information not recognized by the various statutes involved." Finally, there is no evidence provided by which we can determine whether the Francis Howell school district, for example, does in fact have a collection rate of 92% as alleged, or whether the Fort Zumwalt school district in fact has a 90% collection rate as alleged.

The last question raised in this case is whether or not the appellants are entitled to interest payments on the amounts paid by them to the collector under protest pursuant to Sec. 139.031. Subsection (5) of that statute provides: "No taxpayer shall receive any interest on any money paid in by him either erroneously or under protest." The trial court, however, ordered the protested payments be refunded to the plaintiffs ". . . together with earned interest on such amounts up to the time they shall be withdrawn by defendant [the collector] from the banks wherein they have been deposited. . . ."

Section 139.031 provides that the collector shall impound in a separate fund all taxes paid under protest until the taxpayer's action to recover the payments is determined, or until 90 days have passed without the taxpayer having commenced such an action. The statute does not say how the impounded funds should be kept, and there is nothing to prevent the collector from depositing these funds for safekeeping in an interest bearing account. If the funds are so deposited, and are subsequently ordered refunded to the taxpayer, it is reasonable that the taxpayer be entitled to the earnings therefrom. Otherwise, the state would receive a benefit from the erroneous or illegal collection of the taxpayer's money. We believe it was the intention of the legislature in Sec. 139.031(5) that no *state* funds from the treasury be used to make interest payments on impounded taxes paid in by the protesting taxpayer, and thus if the impounded funds are not placed in an interest bearing account, the taxpayer would not be entitled to any interest thereon.

In this case there is no evidence indicating whether or not the taxes paid into the fund by the plaintiffs under protest were placed by the collector in an interest bearing account, but the judgment of the trial court states that ". . . judgment shall be, and hereby is, entered in favor of the below named plaintiffs in the following principal amounts together with earned interest on such amounts up to the time they shall be withdrawn by defendant from the banks wherein they have been deposited. . . ."

As stated above, the term "earned interest" in the trial court's judgment can apply only to interest accumulated by virtue of the impounded taxes being placed in interest bearing accounts. With this meaning assigned thereto, the judgment is affirmed.

BARDGETT, J., and HIGGINS, Special Judge, concur.

HOLMAN, P. J., not sitting.

DONNELLY, J., not a member of Division when cause was submitted.