SOUTHWESTERN BELL TELEPHONE COMPANY, a corporation, Missouri Utilities Company, a corporation, Natural Gas Pipeline Company of America, a corporation, Missouri Pacific Railroad Company, a corporation and Mississippi River Transmission Corporation, a corporation, Appellants,

v.

Paul HOGG, Collector of Revenue, Respondent,

Twin Rivers School District R–10, Neelyville School District R–4 and Poplar Bluff School District R–1, Intervenors.

Nos. 60194–60198.

Supreme Court of Missouri, En Banc.

July 24, 1978.

David E. Blanton, Blanton, Rice, Sickal, Gilmore & Winchester, Sikeston, Jack C. Lorenz, St. Louis, James E. Taylor, Kansas City, John W. Kelly, Judge, St. Louis, John L. Oliver, Jr., Oliver, Oliver & Jones, Richard D. Jones, Walter S. Drusch, Jr., Spradling, Drusch, Dillard & Spradling, Cape Girardeau, for appellants.

G. H. Terando, N. E. Brown, Poplar Bluff, for respondent.

Robert C. Hyde, Clinton Summers, Poplar Bluff, for intervenors.

BARDGETT, Judge.

This is an appeal involving five consolidated Butler County Circuit Court suits, all of which were filed by certain utilities and a railroad to recover school district taxes paid under protest. The circuit found against plaintiffs-appellants and in favor of defendant-respondent Paul Hogg, collector of revenue of Butler County, and the school districts involved. This is the most recent of a number of cases[1] we have had in the past few years involving the construction of sec. 137.073, RSMo 1969,[2] a revenue law of Missouri. This court has jurisdiction. Art. 5, sec. 3, Mo.Const., as amended 1970.

The total assessed valuation of real property in Butler County, Missouri, for 1974 was $32,727,194. In 1975, by an order or series of orders of the county assessor and board of equalization of Butler County, and by action of the state tax commission, the certified total assessed valuation of real property in Butler County was $37,947,570, an increase of 15.67 percent over 1974. The rates of the respective school districts comprising the average school tax levy of $3.61 per $100 assessed valuation were all certified by each of the school districts to the county clerk after the date of the order or series of orders referred to above were made. The 3.61 average rate was certified

1. *Missouri Pacific R. Co. v. Kuehle*, 482 S.W.2d 505 (Mo.1972); *St. Louis-Southwestern Ry. Co. v. Cooper*, 496 S.W.2d 836 (Mo.1973); *Missouri Pacific R. Co. v. Campbell*, 502 S.W.2d 354 (Mo.1973); *Southwestern Bell Tel. Co. v. Feuerstein*, 529 S.W.2d 371 (Mo.1975); *Missouri Pacific R. Co. v. Jones*, 544 S.W.2d 541 (Mo. 1976).

2. "Whenever the assessed valuation of real or personal property within the county has been increased by ten per cent or more over the prior year's valuation, either by an order of the state tax commission or by other action, and such increase is made after the rate of levy has been determined and levied by the county court, city council, school board, township board or other bodies legally authorized to make levies, and certified to the county clerk, then such taxing authorities shall immediately revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as pre- viously estimated to be produced by the original levy. Where the taxing authority is a school district it shall only be required hereby to revise and lower the rates of levy to the extent necessary to produce from all taxable property substantially the same amount of taxes as previously estimated to be produced by the original levy, plus such additional amounts as may be necessary approximately to offset said district's reduction in the apportionment of state school moneys due to its increased valuation. The lower rate of levy shall then be recertified to the county clerk and extended upon the tax books for the current year. The term 'rate of levy' as used herein shall include not only those rates the taxing authorities shall be authorized to levy without a vote, but also those rates which have been or may be authorized by elections for additional or special purposes. No levy for public schools or libraries shall be reduced below a point that would entitle them to participate in state funds."

to the county clerk in May 1975. By answer to an interrogatory, defendant Paul Hogg stated the assessed valuation of the county was finally determined on June 1, 1975. The trial court found the increase was effective January 1, 1975, a date prior to the time the school districts set their original levy in 1975. Subsequently, the school districts filed revised rates of levy which produced an average rate for the purpose of distributable property of 3.41 per $100 assessed valuation except that in R–1 district the tax on Missouri Utilities Company was assessed at 4.10 per $100 assessed valuation with regard to its locally assessed property.

The school districts' original estimate of their monetary needs from taxation totalled $2,481,217. This was to be produced by using an average rate of 3.61 per $100 assessed valuation as to distributable property and a certified rate as to locally assessed property in the particular school district. The $3.61 rate was, as noted above, reduced to $3.41. Although intervenors and defendant (respondents) orally argued the reduction from 3.61 to 3.41 was not because of the application of sec. 137.073 but rather the result of a redetermination of needs, they state in their brief that respondents "have acted in good faith and truly believe that they have substantially complied with sec. 137.073, even though the Trial Court found that such compliance was not necessary."

The reduced rate of 3.41 as applied to distributable property and the certified rates as applied to individual real property in the school districts, plus locally assessed property, produced $2,569,021 which is approximately $90,893 more than the estimated need.

Thus, the 3.41 rate as to distributable property and the certified rate as to locally assessed property resulted in excess taxation on the whole of $90,893, and as to appellants an excess of $13,737.60.

The appellants contend an average rate of 3.32 per $100 assessed valuation should have been used which would have produced $2,483,906 or only $2,689 in excess of the

estimated need. This, appellants argue, would be a sum that is substantially the same amount as previously estimated to be produced by the original levy as applied to the 1974 assessed valuation and satisfy the declared needs of the school districts.

The trial court held, *inter alia,* that sec. 137.073 was not applicable because the 11% blanket increase in all real property ordered by the state tax commission was effective January 1, 1975, which was prior to the date or time in 1975 when the school districts set their original rate of levy. The trial court further found that the 11% increase was anticipated by the school districts when they set their original rate and "[i]n any event, the increase [in assessed valuation] was not made after the rate of levy was set and the provisions of Section 137.073 RSMo 1969 were never activated."

The January 1, 1975, date referred to by the trial court as the effective date of the assessment increase is simply the date which controls as to who is liable for the 1975 taxes on real or tangible personal property. The owner of property on the first day of the year is liable for the taxes thereon during the same calendar year. Sec. 137.075, RSMo 1969. The first day of January is also the commencement of the property assessment procedure for that year, sec. 137.080, RSMo 1969, and the value finally arrived at during the assessment process relates back to the property owned by the taxpayer on the taxable date—January 1. The process of arriving at the final assessed valuation of property, however, may consume the better part of the year. Sec. 138.390, RSMo 1969, requires the state tax commission to equalize the valuation of real and tangible personal property between June 20 and the second Monday in July and sec. 138.400, RSMo 1969, requires the equalization order and report to be forwarded to the appropriate county officials on or before the second Monday in July. The state tax commission performed its equalization task between June 20 and July 27, 1975, with respect to all of the counties of Missouri, including Butler County. See Thirtieth Annual Report of the Proceedings

and Decisions of Missouri State Tax Commission for year ending December 31, 1975, pp. 411–414 (hereinafter 30th Annual Report). This aggregate valuation of real estate, $37,947,770, became the assessed valuation for Butler County for 1975 as of the taxable date of January 1, 1975.

It is obvious that the event mentioned in sec. 137.073—the assessed valuation of real or personal property within the county has been increased by ten percent or more—did not take place on January 1, as contended by respondents and found by the trial court. That event took place whenever the assessed valuation of the county was finally determined. Furthermore, if January 1 were determined to be the date of increased assessment for the purposes of sec. 137.073, then the legislature engaged in a completely futile act in enacting sec. 137.073 into law. This is so because the rate of levy will always be determined by a school district *after* January 1 of any given year.

Also we know the general assembly had no such intent because sec. 137.073 was adopted as an emergency measure by the 68th general assembly with an emergency clause that it become effective upon approval by the governor, which was done on July 14, 1955. Laws of Mo. 1955, p. 835, S.B. 286. The law was obviously intended to be applicable to tax levies and assessments for 1955 as there would have been no reason to enact an emergency provision if this were not so. It was first introduced in the Senate on February 28, 1955, and finally passed and sent to the governor on May 31, 1955. Senate Journal, 68th General assembly, Vol. 1 at 304, and Vol. 2 at 1443 (1955). If January 1 were the date of the increased assessed valuations, as found by the trial court, this law could not have been applicable to 1955 property taxes, the adoption of the emergency clause would have been a futile act, and, as noted supra, it could never be applied to cause a reduction in levies because all levies are determined *after* January 1 of any given year, which, according to the trial court, would be *after* the date of increased valuation, to wit, January 1.

■ The trial court was incorrect in holding that January 1 was the date of increased assessed valuations.

In *Southwestern Bell Tel. Co. v. Feuerstein*, 529 S.W.2d 371 (Mo. 1975), the appellants school districts similarly contended the statute did not apply because the increased valuation was made *prior* to the time when the rates of levy were determined by the school districts saying the increases were "anticipated" by the districts when they set their rate of levy. In the instant case, the districts argued that the county assessor Paul Hogg knew about the upcoming increases and informed the districts which took the increases into account in setting their levies.

In *Missouri Pacific R. Co. v. Campbell*, 502 S.W.2d 354, 358 (Mo. 1973), the court rejected the districts' contention noting that "[a]s required by law, the districts filed a written estimate with the county clerk stating the amount of money needed for the ensuing year and the tax rate (based upon the assessed valuation for the prior year) that would be levied to produce that amount." The districts' contention that the original estimate of need and levy was based upon their knowledge of anticipated increases was rejected, the court saying at 359: "The districts should not be permitted to repudiate the amount of their needs as stated in their official estimates and to now state that their estimates were intentionally incorrect *and based upon information* [anticipated increased assessments] *not recognized by the various statutes involved.* Such a procedure would not only be a violation of those statutes but would tend to emasculate the specific reduction provision of sec. 137.073 and place its enforcement on a tenuous and speculative basis." (Emphasis added.)

A similar contention was rejected in *Southwestern Bell Tel. Co. v. Feuerstein, supra,* the court saying at 373: "Next, the appellant school districts contend that the increase in assessed valuation was made prior to the time when the rates of levy were determined, bringing into question that portion of Sec. 137.073 which required

a revision of the rates of levy when '. . . such increase (in assessed valuation is) made after the rate of levy has been determined and levied by the . . . school board . . .' Although the parties attempt to establish various pertinent dates to support their respective contentions, *it is not necessary to determine the exact day on which the increase in assessed valuation was 'made' in this case. The intent of Sec. 137.073 is clear: where the school boards determine a rate of levy calculated to meet their estimated revenue needs, and it is thereafter found that such rate of levy will produce more revenue than that estimated because of an increase of 10% or more in assessed valuation, the levies must be adjusted downwards to produce substantially the same amount as that originally estimated.* In this case, the school districts involved would receive approximately $800,000 more in tax revenues than their estimated needs if their original rates of levy were allowed to be applied to the 1972 valuation, precisely the kind of windfall which Sec. 137.073 seeks to prevent. Appellants ought not to be heard saying that their rates of levy were determined 'after' the increase in valuation was made, when their original estimated needs were not based on the increased valuation." (Emphasis added.)

In the instant case the school districts do not say what assessed valuation figure was used by them to arrive at the rate of levy but content themselves with merely saying that the increased assessed valuation occurred prior to the time the districts set their rates and on that basis seek affirmance of the trial court judgment.

We do not know the dates each district submitted its original annual estimate as required by sec. 164.011, RSMo Supp. 1975, except for the trial court finding, which is not contested, which stated they were submitted between May 15, 1975, and July 14, 1975, as required by statute; that the amount of money needed to be raised by taxation was $2,481,217 and the levies averaged $3.61 per $100 assessed valuation in the original estimates and by filings between August 14, and September 11, 1975,

reduced the average rate to $3.41 per $100 assessed valuation. A rate of levy could not be mathematically computed however without a base figure (assessed valuation). As stated in the 30th Annual Report of the state tax commission at 30: "There are three factors in taxation (1) Assessed Valuation, (2) Amount of money necessary to be raised, (3) Rate of Levy. County Courts, City Councils and School Boards must have the assessed valuation and the aggregate amount of money to be raised before they can fix the rate of levy. The rate of levy is always the last factor to be determined, and to be obtained as a quotient, the assessed valuation being the divisor and the amount of taxes the dividend."

The transcript contains the "Estimate of Required Local Taxes" for one of the school districts—Twin Rivers R-10—dated May 12, 1975. The estimate used the figure of $8,012,556 for the assessed valuation of property within that district. The $8,012,-556 was the assessed valuation of property within Twin Rivers School District in Butler County for the *year 1974*, as per stipulation. The record also reflects that the revised estimate filed by Twin Rivers, pursuant to sec. 164.011, dated July 21, 1975, also used the same *1974* assessed valuation figure (not the 1975 assessed valuation figure of $8,754,911) and reduced the rate from 3.30 to 3.10 per $100 assessed valuation. The revised rate of 3.10 would produce $248,389, the amount the district declared it needed if the 1974 valuation is used as the base; but if the increased valuation for 1975 is used, the same rate produces $271,-402 (87549.11 × 3.10 = 271,402) which is $23,013 (271,402 − 248,389 = 23,013) in excess of need. The $23,013 is approximately 9.26% in excess of needed taxes. The original rate of 3.30 per $100 applied to the stated 1974 valuation would have produced $264,414, the stated need in the original estimate but, as applied to the 1975 valuation, would have produced $288,912, some $24,498 in excess of the originally stated need and $40,523 in excess of the revised stated need. In any event, both estimates of required local taxes filed by Twin Rivers

R-10 School District used the *1974* assessed valuation figures and not the "anticipated increase" or the actual increased valuation figures for 1975.

Although the court found that the involved school districts filed amended or revised estimates of need between August 14 and September 11, 1975, there is no finding or specific evidence or stipulation as to the figures used as assessed valuation factors in computing either the original or revised rates of levy. The facts with respect to Twin Rivers R-10 are known simply because copies of Twin Rivers' estimates were filed in the cause by Twin Rivers School District.

But it seems clear that the other school districts did not compute their rate of levy based upon the 1975 assessed valuations in either their original or amended or revised estimates even though their amended or revised estimates were filed between August 14 and September 11, 1975.

Respondents assert that it is stipulated that the rates of the respective school districts were all certified by each of the school districts *after* the date of the order or series of orders which raised the assessed valuation of real property in Butler County to $37,947,570. Respondents contend that because the assessed valuation was raised *before* the rates of levy were submitted sec. 137.073 does not apply. It is, of course, correct that 137.073 provides that when the assessed valuation is increased by ten percent or more and the increase is made *after* the rate of levy has been determined the levying authority (school districts) must revise and lower the rate so as to produce substantially the same amount as originally estimated to be produced by the original levy. It seems obvious the legislature provided under sec. 137.073 that a reduction in the levy must be made if an increase in valuation occurs *after* the rate of levy is submitted on the assumption that if the increased valuation figures are finally determined *before* the rate of levy is finally determined the new increased valuation will be used rather than the previous year's lower valuation.

In the instant case it is clear from the admitted facts that the school districts used the 1974 assessed valuation figures in arriving at their original rate of levy. Yet, the school districts seek to avoid the application of 137.073 saying, in effect, that even though we knew what the increased valuation figure was before we submitted our estimate in compliance with sec. 164.011, and even though we did not use the increased valuation to arrive at our rate of levy but instead used the previous year's lower valuation, and as a direct consequence arrived at a rate of levy when applied to the new assessed valuation produces taxes well in excess of our declared needs, we, nevertheless, are not required to make any correction under the statute.

In *Feuerstein supra* at 373, the court held it was not necessary to determine the exact day on which the increase in assessed valuation was made, the intent of the statute being that where a school board determines a rate calculated to meet its estimated revenue needs and it is thereafter found that such rate will produce more money than estimated because valuations increased ten percent or more, the rate must be adjusted downward so as to produce substantially the same amount when applied to the increased valuation as was originally estimated.

■ Where, as here, the valuation is increased by ten percent or more but the valuation used by the school districts is the previous year's lower valuation, the *date* of the increase becomes immaterial. Otherwise the whole purpose of sec. 137.073 would be easily circumvented by merely manipulating the date upon which the estimate of required local taxes is filed.

In the instant case, the school districts are unable to state the date they contend the increase valuation was determined. That is understandable because the process of arriving at a final assessed valuation for a county may continue on into September or October. In 1975 the 30th Annual Report of the tax commission shows an equalization order was entered July 27, 1975. That may have been the final valuation

that year. In other years orders were made in August, September, and October affecting the aggregate assessed valuation of a county. E. g., 29th Annual Report of the tax commission at 413–419.

Here, as in *Feuerstein*, the purpose of the statute must be given effect. There was over $90,000 in excess of estimated need produced by taxes. This excess was the consequence of the assessed valuation of real property in Butler County increasing by more than ten percent and the failure of the school districts to lower their original rates in view of the increased valuation so as to produce tax revenue commensurate with their declared estimate of need.

The school districts argue that the excess —$90,000—was less than a four percent increase in the tax levy and, therefore, the total produced was substantially the same as the estimated revenue need and that the school districts made a "good faith" effort to comply with sec. 137.037. Appellants do not contend the school districts acted in bad faith but simply that they have not complied with sec. 137.073.

All that is required is for the school districts to make the mathematical computation using the known factors of revenue need and new increased valuation to arrive at the rate which will produce the needed revenue when applied to the assessed valuation. The result will not be the exact amount of estimated need from taxation but it can and should be very close to it.

In *St. Louis-Southwestern R. Co. v. Cooper*, 496 S.W.2d 836 (Mo. 1973), the court noted that "substantially the same" is synonymous with "practically", "almost", "essentially", and "virtually" the same.

■ The court holds that the reduction made by the school districts in their rates of levy which produced $90,893 over estimated needs was not sufficient to comply with sec. 137.073 in that the amount produced was not substantially the same as previously estimated to be produced by the original levy.

The average rate suggested by appellants is 3.32 per $100 assessed valuation which would have produced revenue of $2,483,906 which is $2,689 over the original estimates filed by the school districts. The tax from appellants' distributable property as a whole was $520,501.90 of which $13,737.60 was protested. In addition to the tax on appellant Missouri Utilities Company's distributable property, there was a tax on its locally assessed property of $2,337.83 of which it paid $85.54 under protest. The total excess taxation on locally assessed property of the county was $90,893 and on distributable property $13,737 for a total excess of $104,630. The court rules that the rate suggested by appellants would have produced sufficient revenues to satisfy the estimated needs of the districts and would have met the requirements of sec. 137.073 and that appellants are entitled to a refund of taxes paid under protest in the following amounts:

| | |
|---|---|
| Southwestern Bell Telephone Co. | $7,015.35 |
| Missouri Pacific Railroad Co. | $1,702.06 |
| Mississippi River Transmission Corp. | $1,615.01 |
| Natural Gas Pipeline Co. | $2,825.74 |
| Missouri Utilities Co. | $ 664.98 |

Respondents contend the statute, sec.137.-073, was to protect the individual taxpayer and that appellants-utilities are not individual taxpayers within the meaning of the statute. Respondents also assert that a refund to appellants would harm the individual taxpayers because the time for protest by individual taxpayers who paid excess taxes has long since passed and, therefore, they cannot obtain a refund.

The reason individual taxpayers paid excess taxes was because the school districts did not reduce the rates as required by sec. 137.073. Had the districts reduced their rate of levy in accordance with sec. 137.073, no one would have been billed for excess taxes and that is what is expected of governmental entities having the power to set rates of levy.

■ The contention that utilities are not taxpayers within the meaning of sec. 137.-073 is without merit.

The judgments are reversed and the causes remanded with directions to enter judgments for the amounts of taxes paid under protest as set forth supra.

MORGAN, C. J., FINCH, DONNELLY, RENDLEN and SEILER, JJ., and HOUSER, Special Judge, concur.

SIMEONE, J., not participating because not a member of the court when cause was submitted.