Henry G. LANE, et al., Appellants,

v.

Patricia S. LENSMEYER, Boone
County Collector, and Columbia
93 School District, Respondents.

No. SC 86116.

Supreme Court of Missouri,
En Banc.

Feb. 15, 2005.

Rehearing Denied April 5, 2005.

Craig S. Johnson, Jefferson City, MO, for Appellants.

John L. Patton, Columbia, MO, G. Alex Bartlett, Jefferson City, MO, for Respondents.

Melissa K. Randol, Kyle Farmer, Missouri School Board Association, Columbia, for Amicus Curiae, Missouri School Boards' Association, Missouri Association of School Administrators and Missouri Municipal League.

MARY R. RUSSELL, Judge.

Henry G. Lane, William and Margie Anglen, Lloyd Haley, Curtis Braschler, Gordon L. Trumbo, Beulah F. Alverson, Ernest W. Greenup, and Ronald M. Lucas (collectively "Taxpayers") appeal from the judgment of the Circuit Court of Boone County in favor of the Boone County Collector, Patricia S. Lensmeyer ("Collector"), and the Columbia 93 School District ("School District") on Taxpayers' amended petition alleging School District's 2001 tax levy rate violated section 67.110.2, RSMo

2000.[1] After opinion by the Court of Appeals, Western District,[2] this Court granted transfer. Mo. Const. art. V, sec. 10.

This Court affirms the judgment of the trial court, finding that the trial court did not err in determining that School District's tax rate did not violate section 67.110.2 in that it was calculated to produce substantially the same revenues as required in the annual budget.

## I. Facts and Procedural History

School District adopted its 2001–2002 school year budget in June 2001. The budget stated a local property tax revenue need of $56,232,505. Based on its declared needs and its total assessed valuation of $1,281,852,353, School District proposed a 2001 tax levy rate of $4.7544 per $100 assessed valuation. After a public hearing, School District adopted the tax levy rate. Collector dispersed the 2001 tax bills, including those of Taxpayers, which reflected taxes due to School District based on the adopted levy rate.

Plaintiff Henry Lane ("Lane") filed a two-count petition against School District seeking (1) a declaratory judgment that School District's 2001 tax rate was excessive and unlawful under section 67.110.2 and (2) an injunction requiring School District to revise the 2001 levy to conform with the provisions of section 67.110.2.[3] In his original petition, only Lane and School District were named parties. Lane, however, was later granted leave to file an amended petition listing himself and the eight other plaintiff Taxpayers as named plaintiffs.[4]

The amended petition filed by Taxpayers alleged that School District's 2001 tax levy rate was excessive and illegal under section 67.110.2. They sought (1) a declaratory judgment that the tax levy rate was excessive and unlawful under section 67.110.2 and (2) a refund from Collector pursuant to sections 139.031 and 139.290 for the taxes they paid as a result of the allegedly excessive 2001 tax rate.[5] Taxpayers argued that the levy rate violated section 67.110.2 because it was not "calculated to produce substantially the same revenues as required in the annual budget," in that it would produce $57,287,725, which was $1,055,220 (1.88 percent)[6] more than the declared local property tax need of $56,232,505 in School District's 2001–2002 budget.

At trial on Taxpayers' amended petition seeking a declaratory judgment and a tax refund, Taxpayers called three witnesses: Collector; Kevan Snell, Director of Business Services for School District and Treasurer for its School Board ("Treasurer"); and Lane. School District presented the

1. All further statutory references are to RSMo 2000 unless otherwise indicated.

2. Portions of the court of appeals opinion authored by the Honorable Edwin H. Smith are incorporated in this opinion without further attribution.

3. Lane also proposed class certification and to act as the class representative of all taxpayers paying property taxes under the levy rate.

4. The amended petition named Collector, not School District, as the sole defendant. At the request of Collector, School District was later added as an indispensable party defendant.

5. Taxpayers also proposed to be appointed as class representatives for all taxpayers who had paid 2001 property tax for School District. Taxpayers' motion for class certification was denied in that the trial court found, as a matter of law, a class action could not be certified and Taxpayers should not be appointed as class representatives.

6. This percentage is derived by dividing $1,055,220 (excess) by $56,232,505 (needs). This calculation yields an answer of 1.87653 percent more, which is rounded to 1.88 percent.

testimony of Dr. Chris Straub ("Expert"), a school finance consultant. The trial court found Treasurer and Expert to be "knowledgeable and qualif[ied] as experts with respect to school finance in Missouri" and it found their testimony was credible. The trial court entered its judgment in favor of Collector and School District finding that School District's 2001 tax levy rate did not violate sections 67.110 or 137.073. It further determined that the provisions of section 139.290 relied on by Taxpayers did not afford them "a procedure for securing any relief under the allegations and proof in this case." Taxpayers appeal.

## II. Jurisdiction

At the outset, this Court must determine its own jurisdiction of this appeal. *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997). Without jurisdiction, the appeal must be dismissed. *Id.* This Court has no jurisdiction if Taxpayers failed to state a claim pursuant to Rule 55.27(a)(6), (2001).

Count I of Taxpayers' amended petition sought a declaratory judgment that the tax levy was in excess of that permitted by section 67.110.2. A court may grant a declaratory judgment if presented with: (1) a justiciable controversy that presents a real, substantial, presently-existing controversy admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation; (2) a plaintiff with a legally protectable interest at stake, "consisting of a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief"; (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law. *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 25 (Mo. banc 2003) (quoting *Northgate Apts., L.P. v. City of N. Kansas City*, 45 S.W.3d 475, 479 (Mo.App.2001)).

Taxpayers failed to meet the requirements for declaratory judgment in that they had an adequate remedy at law for addressing the issue of excessive taxes paid because they could request a refund of the taxes they believed were collected in violation of section 67.110.2. Indeed, Count II of Taxpayers' amended petition requests a partial refund, pursuant to section 139.031.5,[7] for the 2001 taxes paid for

---

7. Section 139.031.5 provided in relevant part:

All the county collectors of taxes ... shall, upon written application of a taxpayer, refund any real or tangible personal property *tax mistakenly or erroneously paid* in whole or in part to the collector.... Such application shall be filed within one year after the tax is mistakenly or erroneously paid. The governing body ... shall make available to the collector funds necessary to make refunds....

Subsection 5 was amended in 2003 to change the period of time in which to file for a refund from one year to three years.

While the disposition of this case centers on Taxpayers' arguments relating to section 67.110.2, the parties also argue whether Taxpayers properly sought a refund pursuant to section 139.031.5.

Subsections 1, 2, 3, and 4 of section 139.031 set forth procedures for challenging

"any taxes assessed against" the taxpayer. To collect a refund under those provisions, the taxpayer must pay the challenged taxes in protest by filing a written statement of protest. Sec. 139.031.1. Taxpayers' petition stated they were seeking refunds pursuant to section 139.031.1, but it also stated that they were seeking refunds for themselves and the class pursuant to section 139.031.5. Section 139.031.5 permits recovery of taxes "mistakenly or erroneously paid" and does not require the taxpayer to pay in protest or commence a court action, though it does limit the time for seeking the refund. Taxpayers argue that refunds for "mistakenly or erroneously paid" taxes under subsection 5 include refunds for taxes paid as a result of an improperly set levy. Collector, School District, and amici curiae (Missouri School Boards' Association, Missouri Association of School Administrators and Missouri Municipal League) urge a narrow application of subsection 5,

School District. As a basis for their refund claim under section 139.031.5 in Count II, Taxpayers asserted that the tax levy violated section 67.110.2. As such, the very issue on which Taxpayers sought a declaratory judgment in Count I was a proof element of their refund claim in Count II.

■■■ An action for declaratory judgment is inappropriate when the issue can be raised by some other means. *Parshall v. Buetzer*, 121 S.W.3d 548, 552 (Mo.App. 2003). There is no showing that the resolution of Taxpayers' Count II would not fully redress the issue on which they sought a declaratory judgment in Count I

and would not be an adequate remedy without recourse to declaratory judgment. Count I of Taxpayers' amended petition for a declaratory judgment failed to state a claim upon which relief could be granted, and the trial court lacked jurisdiction to enter judgment thereon. Therefore, in reviewing this case, this Court treats the trial court's judgment on Taxpayers' amended petition as an adjudication as to only Count II, the refund claim.

As to Count II, the jurisdictional issue is whether Taxpayers have standing to bring this appeal.

First, School District asserts that the voluntary dismissal with prejudice of

contending that subsection 5 is for use only by individual taxpayers and not intended for refunding taxes paid under an improperly set levy.

The provisions of subsections 1 to 4 and subsection 5 of section 139.031 are distinct and mutually exclusive. Payment under protest is required before seeking relief under subsections 1 to 4 so that "the taxpayer can make it known that [he or she] is paying involuntarily and can alert the taxing authority to the amount of the refund claimed so that the challenged tax can be segregated and held until resolution of the dispute." *Quaker Oats Co. v. Stanton*, 96 S.W.3d 133, 138 (Mo.App. 2003). A payment made under protest also warns the collector that the tax is claimed to be illegal, serves as notice to the government of the dissatisfaction of the taxpayer, and defines the grounds on which the taxpayer stands. *Id.* Without this warning, the collector might collect taxes for several years and disburse them, in reliance upon their apparent validity, and then suffer financial hardship if ordered to make later refunds. *Id.*

In a very narrow class of cases in which taxes were paid through mistake or error, subsection 5 provides an alternative to the administrative remedies and the requirement that taxes be paid under protest. *Id.* Subsection 5 is to be narrowly construed to apply only where administrative or judicial remedies are unavailable to the taxpayer due to the actions of taxing officials. *See id.* at 142–43. "[A] narrow construction of the relief available in subsection 5 of section 139.031 is necessary, considering that there needs to be

certainty for taxpaying entities and the ability of the collector to disburse the taxes." *Id.* at 143. Public policy discourages suits for the refund of taxes erroneously paid or illegally collected and favors certainty in the collection of revenue. *See Crest Communications v. Kuehle*, 754 S.W.2d 563, 567 (Mo. banc 1988). Only in *Crest* has a taxpayer been granted relief pursuant to the "mistakenly or erroneously paid" provisions of what is now subsection 5, and in that case other administrative and judicial remedies were unavailable to the taxpayer. In *Crest*, the taxpayer paid his taxes without protest where he had not received a required notice of increased assessment. *Id.* at 564. This Court found that because the collector was aware of the taxpayer's disagreement over his assessment, his payment of the increased amount due to the failure to be given the required notice fell within the meaning of "mistakenly or erroneously paid." *Id.* at 567. Since the *Crest* decision, the appellate courts in Missouri have consistently limited *Crest* to its particular facts and have not again extended section 139.031.5 to provide a refund. Taxpayers in this case, unlike the taxpayer in *Crest*, did have notice of the increased tax rate and paid under protest as required in subsections 1 to 4. Insofar as Taxpayers could and did seek relief pursuant to subsections 1 to 4, it was improper for them to also seek relief pursuant to subsection 5. Additionally, nothing in section 139.031 authorizes class refunds. Under the facts of this case, it was inappropriate for Taxpayers to seek relief pursuant to section 139.031.5.

Lane's original petition prevents Lane [8] from having standing in this appeal because a party is estopped and waives his right to appeal when a judgment is entered at his request. *Stewart v. Stewart,* 866 S.W.2d 154, 158 (Mo.App.1993). Lane's original two-count petition listed only himself and School District as named parties. He later filed a written motion for leave to amend his petition pursuant to Rule 55.33(a), (2001).[9] In sustaining Lane's motion, the trial court made the following docket entry:

PLAINTIFF APPEARS PERSONALLY AND BY COUNSEL. DEFENDANT APPEARS BY COUNSEL. AT PLAINTIFF'S REQUEST, COUNTS I AND II DISMISSED WITH PREJUDICE AND PLAINTIFF GIVEN LEAVE TO FILE 1ST AMENDED PETITION. SAME FILED. SUMMONS ORDERED ISSUED.

■ The portion of the trial court's docket entry dismissing Lane's petition with prejudice is clearly at odds with its express grant of leave to file the amended petition. Once a petition is dismissed with prejudice, the trial court is powerless to reinstate it, including the filing of an amended petition. *Liberman v. Liberman,* 844 S.W.2d 79, 80 (Mo.App.1992). The trial court is presumed to know the law and, as such, this Court infers that the trial court in this case understood that it could not both dismiss Lane's petition with prejudice and grant him leave to amend it. *See Harrison v. Coomber Realty & Inv. Co.,* 359 Mo. 862, 224 S.W.2d 63, 64 (1949) (stating that the trial court is presumed to know the law). Because the trial court granted Lane leave to file the amended petition and proceeded with the case, it could not have intended to dismiss his original petition with prejudice. The dismissal language was superfluous and without effect and does not cause Lane to lack standing in this appeal.

■ School District further challenges Taxpayers' standing to bring this appeal by asserting that they are not "aggrieved" by the trial court's judgment in that the total amount of all their tax refund claims, both individually and collectively, is insufficient for them to be "aggrieved" within the meaning of section 512.020.[10] This Court disagrees.

School District argues that *Koehr v. Emmons,* 55 S.W.3d 859 (Mo.App.2001), stands for the proposition that where the amount of the tax refund claimed is significantly less than the filing fee for the appeal, the appellants are not "aggrieved" within the meaning of section 512.020. Reliance on *Koehr,* however, is misplaced. In *Koehr,* the plaintiffs, individually and as

---

**8.** School District does not claim that the dismissal of Lane's original petition affects the standing of the other eight Taxpayer plaintiffs.

**9.** Rule 55.33(a), (2001), provided in pertinent part:

A pleading may be amended once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the pleading may be amended at anytime within thirty days after it is served. Otherwise, the pleading may be amended only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

**10.** Section 512.020 requires that a party be "aggrieved" by a final judgment before having any right to appeal. Sec. 512.020; *Schroff v. Smart,* 120 S.W.3d 751, 754 (Mo.App.2003). "An aggrieved party is one who suffers from an infringement or denial of legal rights." *Schroff,* 120 S.W.3d at 754. Further, the judgment at issue "must operate directly and prejudicially on the party's personal or property rights or interests" with immediate effect. *Id.*

representatives of a class of ad valorem taxpayers, filed a petition seeking a refund of taxes allegedly levied in excess of the limits set forth in the Hancock Amendment. 55 S.W.3d at 861. In addressing the individual tax refund claim, the court explained that the amount allegedly overpaid, just $4.04, was less than 10 percent of the filing fee for the appeal. *Id.* at 864. It indicated that "such an insubstantial sum does not provide a proper foundation for finding a Hancock violation," because the tax and spending limitations of the Hancock Amendment are "not thwarted if the calculation of the revenue limit is not accurate to the mill." *Id.*

 The *Koehr* court did not refuse review because the appellant was not aggrieved as to the amount in controversy being insubstantial in comparison to the filing fee for appeal, as School District contends. Instead, the *Koehr* court found that the sum in controversy was so insubstantial that it did not constitute a Hancock violation. Taxpayers' case does not involve a question of whether the tax levy in question violated the Hancock Amendment and, as such, *Koehr* is not controlling. Taxpayers' refund requests are sufficiently substantial to render them aggrieved parties. Taxpayers are aggrieved for purposes of section 512.020 in that the trial court ruled against them on their amended petition seeking a refund of taxes paid under an allegedly excessive levy.

Finding jurisdiction to review this appeal, the merits of Taxpayers' appeal are considered.

### III. Standard of Review

 In a court-tried case the decision of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). In reviewing this case, however, this Court also considers that the establishment of a tax levy is an exercise of legislative function, whether state or local, in determining if a tax shall be imposed and fixing the amount, purpose, and subject of the tax. *See State ex rel. Indus. Servs. Contractors, Inc. v. County Comm'n of Johnson County,* 918 S.W.2d 252, 256 (Mo. banc 1996).

### IV. Did School District's 2001 tax levy rate violate section 67.110.2?

Taxpayers allege that the trial court erred in determining that the tax levy did not violate section 67.110.2 so as to trigger a refund under section 139.031.5. Section 67.110 requires that each political subdivision in the state, except counties, fix its ad valorem property tax rates according to a procedure outlined in that statute. Section 67.110.2 requires that "[t]he tax rates shall be calculated to produce *substantially the same revenues* as required in the annual budget." Sec. 67.110.2 (emphasis added).

### A. Is section 67.110.2 applicable to School District?

School District argues that section 67.110 is merely a general statute relating to political subdivisions setting tax rates, whereas section 164.011 is the specific statute applicable to how school districts set tax rates. School District cites *Greenbriar Hills Country Club v. Director of Revenue,* 935 S.W.2d 36 (Mo. banc 1996), for the proposition that "[w]hen the same subject matter is addressed in general terms in one statute and in specific terms in another, the more specific controls over the more general." 935 S.W.2d at 38. This theory, however, only applies where two statutes governing the same issue are in conflict and cannot be harmonized. *Nich-*

*ols v. Dir. of Revenue,* 116 S.W.3d 583, 586 (Mo.App.2003).

Section 164.011 "is the statutory mechanism by which school districts must certify the taxes necessary to be produced (estimate of need) to the county clerk." *Southwestern Bell Tel. Co. v. Mitchell,* 631 S.W.2d 31, 37 (Mo. banc 1982). It provides in pertinent part:

The school board of each district annually shall prepare an *estimate* of the amount of money to be raised by taxation for the ensuing school year, the rate required to produce the amount, and the rate necessary to sustain the school or schools of the district for the ensuing school year, to meet principal and interest payments on the bonded debt of the district and to provide the funds to meet other legitimate district purposes. In preparing the estimate, the board shall have sole authority in determining what part of the total authorized rate shall be used to provide revenue for each of the funds as authorized by section 165.011, RSMo.

Sec. 164.011.1 (emphasis added).

 While section 164.011 governs the procedure school districts must use in certifying their estimated needs for the ensuing school year, section 67.110 governs the procedure that they must follow in actually fixing their ad valorem property tax rates to meet their estimated needs. Because sections 164.011 and 67.110 address separate and distinct steps in the taxing procedure of school districts, they are not properly characterized as being general versus specific, much less as being in conflict with each other.

By its express terms, section 67.110 applies to "[e]ach political subdivision in the state, except counties . . . as defined in section 70.120." Sec. 67.110.1. Section 70.120(3) defines a political subdivision as "any agency or unit of this state which now is, or hereafter shall be, authorized to levy taxes or empowered to cause taxes to be levied," which includes a school district.

School District was required to comply with section 67.110.2 in setting its tax levy. The question is whether it did so. That question turns on whether the tax levy produced "substantially the same revenues" as required in School District's 2001–2002 budget.

## B. Defining "substantially the same revenues"

 There is no statute or case law defining the phrase "substantially the same revenues" as used in section 67.110.2. In interpreting statutes, this Court determines the intent of the legislature, giving the language used its plain and ordinary meaning. *State, Mo. Dep't of Soc. Servs., Div. of Aging v. Brookside Nursing Ctr., Inc.,* 50 S.W.3d 273, 276 (Mo. banc 2001). In determining legislative intent, the statute is read as a whole and *in pari materia* with related sections. *Id.* In interpreting statutes, " 'it is appropriate to take into consideration statutes involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed, even though the statutes are found in different chapters and were enacted at different times.' " *Buck v. Leggett,* 813 S.W.2d 872, 874–75 (Mo. banc 1991) (quoting *Citizens Elec. v. Dir. of Dept. of Rev.,* 766 S.W.2d 450, 452 (Mo. banc 1989)). Statutes involving the assessment, levy and payment of taxes should be construed in context with each other. *See id.*

Although the phrase "substantially the same revenues" as found in section 67.110.2 has not been interpreted, this Court has interpreted the nearly identical phrase, "substantially the same amount of tax revenue," found in section 137.073.2,

commonly referred to as the rollback statute. The present version of section 137.073.2 provides in relevant part:

Whenever changes in assessed valuation are entered in the assessor's books .... [a]ll political subdivisions shall immediately revise the applicable rates of levy for each purpose ... for which taxes are levied to the extent necessary to produce from all taxable property, exclusive of new construction and improvements, *substantially the same amount* of tax revenue as was produced in the previous year....

Sec. 137.073.2, RSMo Cum.Supp.2003 (emphasis added). In *St. Louis–Southwestern Railway Co. v. Cooper*, 496 S.W.2d 836 (Mo.1973), this Court interpreted the 1969 version of this section, which provided in relevant part:

Whenever the assessed valuation of real or personal property within the county has been increased by ten percent or more over the prior year's valuation ... then such taxing authorities shall immediately revise and lower the rates of levy to the extent necessary to produce from all taxable property *substantially the same amount* of taxes as previously estimated to be produced by the original levy.

Sec. 137.073, RSMo 1969 (emphasis added).

In *Cooper*, railroads sought to recover school taxes they paid under protest because they believed them to be excessive in light of section 137.073, RSMo 1969. 496 S.W.2d at 838. This Court held that an excess of 9.3 percent[11] over that required according to the original estimates did not comply with the mandate of section 137.073, RSMo 1969, stating:

The meaning of the phrase "substantially the same" is well known. "Substantially," as the word is used in the statute, is synonymous with "practically", "nearly", "almost", "essentially" and "virtually." ... [A]n increase of 9% in revenue, obviously cannot be said to have produced almost the same amount of revenue as had been originally estimated.

*Cooper*, 496 S.W.2d at 842.

School District points out, however, that this Court's conclusion in *Cooper* suggests a variance of 5.5 percent is "substantially the same" for purposes of satisfying section 137.073.2. One of the plaintiffs in *Cooper* requested the imposition of a "correct" levy rate that would still have produced approximately 5.5 percent[12] excess revenues. *Id.* at 843. After acknowledging this rate would still produce an excess, this Court concluded that "the rates suggested by plaintiffs would have produced sufficient revenue for the districts and at the same time would have met the requirements of [section] 137.073." *Id.*

This Court was again confronted with a case arising under section 137.073, RSMo 1969, in *Southwestern Bell Telephone Co. v. Hogg*, 569 S.W.2d 195 (Mo. banc 1978). In *Hogg*, the school district argued that it made a "good faith" effort to comply with the "substantially the same" requirements of section 137.073, RSMo 1969. *Id.* at 201. This Court stated that although the school district's computations would not result in "the exact amount of estimated need from

11. This percentage represented $125,187 excess taxes collected, divided by the $1,346,912 taxes estimated to be produced by the original levy. *See Cooper*, 496 S.W.2d at 839.

12. This percentage is based on the proposed rate producing approximately $75,000 more than the amount previously estimated to be produced by the original levy ($1,346,912). The percentage is calculated by dividing $75,000 by $1,346,912.

taxation, ... *it can and should be very close to it.*" *Id.* (emphasis added).

■ Section 67.110.2 and section 137.073.2, RSMo Cum.Supp.2003, use nearly identical language in phrasing their "substantially the same" requirements.[13] Further, section 67.110 and section 137.073.2, RSMo Cum.Supp.2003, involve similar subject matter. As such, it is logical to apply the same definition of "substantially the same" to both statutes. The legislature intended the phrase "produce substantially the same revenues as required in the annual budget" to mean that the amount of the revenues produced be practically, nearly, almost, essentially, or virtually the same as that required in the budget.

Although this definition does not advise school districts and other political entities as to what range of deviation between revenues produced and budgeted needs is acceptable, this Court discussed the meaning of "substantially the same" in section 137.073 in *Cooper*:

> [T]he words "substantially the same amount" were used in [section] 137.073 with the recognition that *a rate which would yield precisely the same amount would be virtually impossible to determine[, but] the purpose of the section is obviously to prevent "windfalls"* in school taxes to the school districts merely because the assessed valuation of the real property in a county increases.

*Cooper*, 496 S.W.2d at 841 (emphasis added).

Following *Cooper*, this Court should determine if School District's tax levy was calculated to produce revenues practically, nearly, almost, essentially, or virtually the same as its budgeted needs, or whether it provided School District a windfall.

## C. Estimated excess taxes collected

■ Taxpayers argue that the undisputed evidence established that the tax levy would produce substantially more revenue than budgeted. School District's 2001–2002 budget declared needs of $56,232,505 in local tax revenues. The total assessed valuation of the taxable property in School District was $1,281,852,353. The tax rate set by School District was $4.7544 per $100 assessed valuation.[14] Assuming a collection rate of 100 percent, the rate set would produce revenues of approximately $60,944,388, or $4,711,883 (7.73 percent) more than the budgeted figure for local tax revenues. School District, however, formulated its budget with the assumption that its tax collection rate would be only 94 percent, which lowered local property tax revenues to $57,287,725, or only $1,055,220 (1.88 percent) more than budgeted.

Taxpayers' arguments to this Court use calculations based on a 100 percent collection rate, yielding an excess taxes figure of $4,711,883 (7.73 percent) more than budgeted. Collector and School District, however, challenge Taxpayers' use of the 100 percent collection calculations. They correctly argue that Taxpayers are barred by Rule 83.08(b) from presenting a new argument based on the 100 percent collection rate to this Court because Taxpayers used School District's 94 percent collection rate

---

**13.** Section 67.110.2 uses the phrase "substantially the same revenues." Section 137.073.2, RSMo Cum.Supp.2003, uses the phrase "substantially the same amount of tax revenue."

**14.** There are three factors in taxation: (1) the assessed valuation; (2) the amount of money necessary to be raised (declared needs); and (3) the rate of levy. *Hogg*, 569 S.W.2d at 199. The levy rate is the last factor determined, after dividing the amount of taxes required by the assessed valuation.

in their arguments to the trial and appellate courts.

Taxpayers' amended petition used calculations based on School District's assumption that 6 percent of the 2001 billed property taxes would be uncollectible. Taxpayers argued:

> Utilizing the School's budget figure, the total assessed valuation figure, *and the six percent uncollectible rate,* complying with [section] 67.110 RSMo, and complying with [section] 137.073.6 RSMo requiring the tax rate to be expressed equal to the nearest 1/100th of a cent,[15] the correct levy rate to produce the same amount of revenue called for in the budget would be $4.6668 per $100.00 of assessed valuation of property.

(emphasis added).

Taxpayers' amended petition argued that the tax levy violated section 67.110.2 in that it would produce $57,287,725, or $1,055,220 (1.88 percent) more than the local property tax need of $56,232,505 declared in School District's budget. Taxpayers' amended petition sought a refund based on the 94 percent collection calculation of $1,055,220 in excess revenues. Like Taxpayers' amended petition, their arguments to the court of appeals were based on a 94 percent collection rate and asserted that School District's levy rate produced excess revenues of $1,055,220.

School District argues that this Court should evaluate Taxpayers' claims based on calculations using the 94 percent collection rate, or the $1,055,220 excess revenue calculation. School District argues that Rule 83.08(b) prohibits Taxpayers from arguing that School District collected $4,711,883 excess taxes because they cannot alter the basis for their claims on appeal. Rule 83.08(b) provides in relevant part: "A party may file a substitute brief in this Court . . . [which] shall include all claims the party desires this Court to review, [but] shall not alter the basis of any claim that was raised in the court of appeals brief."

The record on appeal and Taxpayers' brief at the court of appeals do not reflect that Taxpayers challenged School District's use of the 94 percent collection rate in its budget process or in its levy determinations. In the trial court and the court of appeals, Taxpayers claimed that the $57,287,725 in revenue produced by the levy was not "substantially the same" as the $56,232,505 budgeted by School District such that the levy violated section 67.110.2, thereby triggering a refund under section 139.031.5. In contrast, they ask this Court to determine whether the revenue produced was "substantially the same" by weighing a figure that is $3,656,663 more than the original challenged difference.

Taxpayers argue that they have altered their first point only with respect to the tax rate and revenue amounts driven by the uncollectible issue. This alteration, however, is significant in the analysis of whether the collected revenue and the budgeted revenue figures are "substantial-

---

**15.** Taxpayers assert that section 137.073.6 controls "the exactitude of tax rates" and instructs that the maximum permissible deviation of a tax rate is 1/100th of one penny, or $0.0001. Taxpayers cite the following language: "Each taxing authority shall express its proposed tax rate in a fraction equal to the nearest one/one hundredth of a cent. A taxing authority shall round up a fraction greater than or equal to five/one thousandth of one cent to the next higher one/one hundredth of a cent." Taxpayers argue that this statute should be read *in pari materia* with section 67.110.2 in determining what deviation is permissible for revenues to be "substantially the same." There is nothing in the rounding rules of section 137.073.6 that is instructive to a determination of the proper definition of "substantially the same revenues" under section 67.110.2.

ly the same" pursuant to section 67.110.2. This calculation is central to the determination of the issues presented in this case. Taxpayers' alteration of the challenged amount has "altered the basis" for their claim in violation of Rule 83.08(b).

 Despite the violation of Rule 83.08(b), this Court finds that the use of the 94 percent collectible figure does not violate existing case law in that School District presented evidentiary support for the use of that collection rate. In *Southwestern Bell Telephone Co. v. Feuerstein*, 529 S.W.2d 371 (Mo.1975), this Court was asked to determine whether the trial court had erred in ordering a refund to certain taxpayers from their school district, pursuant to section 137.073, RSMo 1969. 529 S.W.2d at 372. That statute required a reduction in the local tax rate levied by the district based on certain instances of increases in assessed valuation of real or personal property. *Id.* at 373. This Court resolved the issue in favor of the taxpayers and affirmed the trial court's judgment, ordering a reduction in the district's levy. *Id.* at 374. This Court also addressed the district's argument that the reduction ordered by the trial court was incorrect in that it was based on a 100 percent collection rate of the levy, rather than the lesser collection rate employed by the district. *Id.* In ruling against the district on that issue, this Court stated: "[T]here is no statutory authority which allows a school district to estimate and assume a rate of collection and state their needs on that basis." *Id.* In addition to pointing out the lack of statutory authority for using a collection rate other than 100 percent, this Court also noted the lack of any evidentiary support for the district's use of the lesser rate. *Id.*

In this case, however, there was evidentiary support for School District's use of a 94 percent collection rate in calculating its 2001–2002 budget. Treasurer testified at trial that School District calculates the collection rate by "taking the total current taxes [to be distributed to School District that year] and dividing by the taxes levied." He further testified that the 6 percent uncollectible rate includes the 1.5 percent fee that School District pays the county collector and the county assessor from its tax revenue. The 2001–2002 budget included a schedule of School District's collection rates for the budget years 1993 to 2001, and then listed the projected 2002 collection rate as 94 percent. This collection rate schedule also shows School District's five-year average collection rate was 94.62 percent and its three-year average was 94.02 percent. Given that School District does not lack evidentiary support for its use of the 94 percent collection rate, *Feuerstein* does not dictate that School District's use of the 94 percent collection rate was improper.

This case is properly analyzed by using the calculations based on a 94 percent collection rate, which reflect that School District collected $1,055,220 more taxes than its declared needs.

### D. Did School District collect "substantially the same revenues" as budgeted?

Whether School District's 2001 tax levy rate generated "substantially the same revenues" as School District's budgeted needs depends on whether a collection of $1,055,220 in excess revenues complies with the "nearly, almost, essentially, virtually" standard.

 The budgeting process for school districts in Missouri is an inexact practice. *Southwestern Bell Tel. Co., Inc. v. Mahn*, 766 S.W.2d 443, 445 (Mo. banc 1989); *Salisbury R–IV Sch. Dist. v. Westran R–I Sch. Dist.*, 686 S.W.2d 491, 496 (Mo.App. 1984). In *Salisbury*, the court noted:

The school district budget process is an inexact practice . . . . because neither the revenues nor the expenditures can be predicted with certainty. The revenues derive from local county, state and federal sources. The local revenues are from the school district levy, and comprise the most significant component of anticipated income. The local revenues also include income from . . . miscellaneous sources. Other significant income derives from the short-term investment of tax receipts, but that fluctuates with the current interest rate.

The school district budget extends from July 1 to June 30. The estimated budget must be approved by the board of education before July 1 of the year, and the Estimate of Required Local Taxes [for the local revenue component of the budget] must be submitted— along with the rate of levy to be extended against the assessed property in the district—to the county clerk by July 15 of the year. The preponderant portion of the taxes, however, are paid to the schools during the early months of the calendar year . . . . [which] compounds the uncertainty of the budget process.

686 S.W.2d at 496.

School District's 2001–2002 budget is a 99–page document, which Treasurer testified was prepared in a yearlong budgeting process. School District presented evidence of some of the uncertainties it faced in formulating its budget at the time it was presented for approval at the June 11, 2001, School Board meeting:

(1) Assessed valuation figures for property within School District were merely preliminary and subject to later adjustment.[16]

(2) School District did not know what the proration factor would be for allocation of basic state aid under the state foundation formula.

(3) School District had not received the worksheets from the State Auditor for use in calculating permissible tax rates for 2001.

(4) School District had not yet received from the Missouri Department of Elementary and Secondary Education the projections on the amount of proposition C sales tax revenues, cigarette tax revenues, and free textbook revenues it would receive in 2001–2002.

(5) The amount of funds it would receive from taxes on state-assessed utilities was not yet known.

Expert testified at trial that the budgeting process for schools in Missouri is "a moving target." He stated:

Statutes said that you're supposed to have a budget adopted before the beginning of the fiscal year. To do that you don't even have the assessed valuation figures which don't allow you to even calculate your final tax rate. Anybody who says they can develop a final school budget prior to beginning the fiscal year is, you can't do that. That's why the budget statutes allow for boards of education to amend their budgets. . . . . The biggest single thing in Missouri school finance is the tax rate. Not only does it determine your local revenues, but . . . . [it] determines your state revenues. And to have any kind of final budget adopted before you can set your tax rate is just nuts. You can't do it. You've got to come back and change it after you have that information.

Immediately before giving this testimony Expert was asked: "[I]f the projected

---

**16.** The preliminary assessment figures used in formulating the budget adopted at the June 11, 2001, meeting were $33,900,606 less than the assessed valuation figures available from the county clerk's office on August 7, 2001.

funds coming in from local tax revenues ... exceeded by two percent the budgeted amount, you would not consider that to be substantial?" Expert opined that it was not a substantial deviation. This Court agrees.

In light of the uncertainties at issue in the school budgeting process, a deviation of 1.88 percent in this case does not violate section 67.110.2. The intent of the legislature's "substantially the same" language in section 67.110.2 is to prevent tax windfalls, and holding taxing entities to the "nearly, almost, essentially, virtually" standard accomplishes this purpose. Because establishing a school budget is an inexact process, it will produce inexact results. The "nearly, almost, essentially, virtually" standard should not be read to require that revenues produced from a school district's levy match *exactly* the district's budgeted needs. The statute does not require "the same" revenues, but merely "substantially the same revenues." School District's levy rate produced 1.88 percent more taxes than budgeted, but it permitted School District to meet its budgeted needs without a windfall collection of tax monies. Given this, the trial court did not err in finding that School District's 2001 tax levy rate did not violate section 67.110.2.[17]

## V. Conclusion

The judgment of the trial court is affirmed.

All concur.

---

**17.** Taxpayers raise three other points of error. Because of the decision on this point, Taxpayers' other points on appeal are moot, and are not addressed. Taxpayers' other points assert: the trial court erred in accepting School District's position that lowering the tax rate to comply with section 67.110.2 would cause

School District loss of state financial aid; the trial court erred in denying Taxpayers' request for class action certification; and the trial court erred in sustaining Collector's motion to join School District as a necessary and indispensable party defendant in this case.